584 S.E.2d 581

**In re: Stephen TYLER R.**

No. 30654.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 21, 2003.

Decided July 1, 2003.

Thomas Moore, Esq., Assistant Public Defender, Public Defender Corporation, Beck-ley, West Virginia, Attorney for the Appellant, Robert R.

Michael W. Blake, Esq., Blake Law Offices, Beckley, West Virginia, Attorney for the Appellee, Aisha S., Darrell V. McGraw, Jr., Esq., Attorney General, Charlene A. Vaughan, Esq., Deputy Attorney General, Angela A. Ash, Esq., Assistant Attorney General, Charleston, Tanya L. Godfrey, Esq., Assistant Attorney General, Beckley, West Virginia, Attorneys for the Appellee, West Virginia Department of Health and Human Resources.

Colleen C. McCulloch, Esq., Brown & Lev-icoff, P.L.L.C., Beckley, West Virginia, Guardian ad Litem for the minor child, Stephen Tyler R.

DAVIS, Justice:

The appellant herein and respondent below, Robert R.[1], appeals from an order entered November 27, 2001, by the Circuit Court of Raleigh County terminating his parental rights to his minor child, Stephen Tyler R., upon a finding of abuse and neglect. Before this Court, Robert R. asserts that the circuit court erred by (1) holding the adjudicatory hearing in his absence in violation of his due process rights; (2) concluding that he had abused and/or neglected Stephen; and (3) exceeding its authority by requiring him to pay child support for Stephen after it had terminated his parental rights to this child. Upon a review of the parties' arguments, the record submitted for appellate review, and the pertinent authorities, we affirm the ruling of the circuit court. We conclude that the circuit court committed no reversible error by holding the adjudicatory hearing in Robert R.'s absence; properly found that Robert R. subjected his son, Stephen Tyler R., to the conditions of abuse and/or neglect; and acted within its statutorily-granted discretion to continue Robert R.'s support obligation following the termination of his parental rights.

---

1. "In this case involving sensitive facts, we adhere to our usual practice adopted in other such cases and refer to the parties by their last initials rather than by their complete surnames." *In re Emily B.*, 208 W.Va. 325, 329 n. 1, 540 S.E.2d 542, 546 n. 1 (2000) (citations omitted).

## I.

## FACTUAL AND PROCEDURAL HISTORY

The instant abuse and neglect proceeding commenced when the appellee herein and petitioner below, the West Virginia Department of Health and Human Resources [hereinafter referred to as "DHHR"], filed, in the Circuit Court of Raleigh County, on February 20, 2001, a petition alleging that the infant child, Stephen Tyler R.,[2] had been abused, neglected, and/or abandoned. Such allegations were based upon a purported suicide attempt by the child's mother and Mr. R.'s girlfriend, Aisha S., on January 13, 2001; Ms. S.'s alleged marijuana use; Mr. R.'s felony drug charges; and ongoing instances of domestic violence between the child's parents, Mr. R.[3] and Ms. S., which violence ultimately endangered the safety of case workers who were attempting to provide home services to prevent the removal of Stephen from his parents' home pursuant to a January 30, 2001, family treatment plan.[4] During an emergency hearing on February 20, 2001, the court deemed Stephen to be in imminent danger and placed him with Ms. S.'s grandmother, Leva V. The court further awarded supervised visitation to both parents. Following this proceeding, Ms. S. and Mr. R. waived their rights to a preliminary hearing.

An adjudicatory hearing was scheduled for April 20, 2001, and was ultimately held on June 8, 2001. Mr. R. did not appear for this hearing because he was incarcerated in Kentucky in connection with an unrelated offense.[5] At the hearing, Mr. R.'s counsel informed the court that her client was not present, but was not aware that his absence was due to his Kentucky incarceration. Despite the objections of Mr. R.'s counsel to conducting the hearing without him being present, the court proceeded with the hearing. Based upon testimony concerning various instances of domestic violence between Mr. R. and Ms. S., and, in particular, Mr. R.'s alleged beating of Ms. S. on November 19, 2000, while she was holding Stephen, the court determined that Mr. R. had abused his child. The court also found that Ms. S. had neglected her child as a result of her stipulation that Stephen had been neglected when she had exposed him to hostile situations. By orders entered July 13, 2001, the court rendered the above findings of abuse and neglect and granted Ms. S. a six-month post-adjudicatory improvement period. The court did not, however, grant Mr. R. a similar improvement period as his counsel made no such request.

Although Mr. R.'s dispositional hearing was scheduled for July 27, 2001, it was not held until September 12, 2001. At this hearing, the court considered and denied Mr. R.'s motion for a post-adjudicatory improvement period.[6] Counsel for Mr. R. also renewed his earlier objection that the court had conducted the adjudicatory hearing in Mr. R.'s absence. Mr. R. provided brief testimony regarding his Kentucky incarceration at the time of the adjudicatory hearing, but the court again overruled counsel's objection on this point. By order entered November 27,

---

2. Stephen was born on April 2, 2000.

3. Although Mr. R. was not listed on Stephen's birth certificate as his father, the parties do not dispute that Mr. R. is, in fact, Stephen's biological father. It is unclear from the record whether Mr. R. has submitted to a paternity test to conclusively establish this relationship.

4. The parties initially began receiving services through DHHR in conjunction with a family treatment plan developed on August 11, 2000. This intervention by DHHR was necessitated by Ms. S.'s suicide attempt in May, 2000, and reports of domestic violence between Mr. R. and Ms. S.

5. In May, 2001, Mr. R., while seeking employment in Kentucky, was involved in a motor vehicle accident in that State and charged with wanton endangerment, terroristic threats, and leaving the scene of an accident. The record is unclear regarding the crime(s) of which he was convicted and the length of his resultant sentence therefor.

6. Due to staff changes in the Raleigh County Public Defender's Office, Mr. R. was represented by one attorney at the adjudicatory hearing, and by different counsel at the dispositional hearing. It appears that counsel who represented Mr. R. at the dispositional hearing did not file a motion for a post-adjudicatory improvement period until September 6, 2001, approximately one week before said hearing.

2001, the circuit court terminated Mr. R.'s rights to his minor child, Stephen Tyler R., but continued his duty to support his son.[7] From these dispositions, Mr. R. appeals to this Court.[8]

## II.

## STANDARD OF REVIEW

■ Procedurally, this matter comes before us as an appeal from the lower court's conclusion that the subject child was abused and/or neglected and its corresponding determination that his best interests necessitated the termination of his father's parental rights. In appeals of abuse and neglect cases, such as the instant proceeding, we apply a compound standard of review.

Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syl. pt. 1, *In re Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996). With this standard in mind, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

On appeal to this Court, Mr. R. raises three assignments of error, arguing that the circuit court erred by (1) holding the adjudicatory hearing in his absence in violation of his due process rights; (2) concluding that he had abused and/or neglected his son; and (3) exceeding its authority by requiring him to pay child support for Stephen after it had terminated his parental rights to his child.

### A. Due Process

■ Mr. R. first contends that he was denied his right to due process when the circuit court conducted the adjudicatory hearing in his absence. In the proceedings underlying the instant appeal, an adjudication of whether Mr. R. had abused and/or neglected Stephen was initially scheduled to be held on April 20, 2001. This hearing did not take place, however, until June 8, 2001. At the appointed hearing time, Mr. R. was absent from the proceedings, and neither the circuit court nor his counsel knew of his whereabouts, although Mr. R.'s counsel did object to the conduction of the hearing in her client's absence. Mr. R. represents that he was absent from this proceeding because he was being held in the Pike County, Kentucky, jail incident to a traffic arrest. Additionally, Mr. R. claims that he wrote a letter to the presiding judge in Pike County, Kentucky, to request leniency so that he could participate in the Raleigh County, West Virginia, abuse and neglect proceedings regarding Stephen. Nevertheless, there is no indication from the record that Mr. R. similarly attempted to notify either the circuit court or his counsel about his Kentucky confinement. On appeal to this Court, Mr. R. claims that the circuit court's decision to hold the adjudicatory hearing in his absence violated his due process right to participate therein, specifi-

7. The circuit court did not, however, terminate Ms. S.'s parental rights to Stephen. Rather, the court continued the six-month post-adjudicatory improvement period it had granted her following the June 8, 2001, adjudicatory hearing. Since the court's disposition of this matter, though, DHHR has moved the court to discontinue Ms. S.'s improvement period and to terminate her parental rights, as well. In any event, Ms. S. is not a party to the instant appellate proceeding.

8. On January 25, 2002, the circuit court extended the time within which Mr. R. was required to file his petition for appeal to permit for the preparation and acquisition of transcripts of the proceedings had in this matter.

cally his opportunity to be heard and to cross-examine witnesses.

 Although we previously have recognized that an incarcerated parent may participate in an abuse and neglect proceeding, this right is conditional, not automatic, and subject to many limitations.

Whether an incarcerated parent may attend a dispositional hearing addressing the possible termination of his or her parental rights is a matter committed to the sound discretion of the circuit court.

In exercising its discretion to decide whether to permit an incarcerated parent to attend a dispositional hearing addressing the possible termination of his or her parental rights, regardless of the location of the institution wherein the parent is confined, the circuit court should balance the following factors: (1) the delay resulting from parental attendance; (2) the need for an early determination of the matter; (3) the elapsed time during which the proceeding has been pending before the circuit court; (4) the best interests of the child(ren) in reference to the parent's physical attendance at the termination hearing; (5) the reasonable availability of the parent's testimony through a means other than his or her attendance at the hearing; (6) the interests of the incarcerated parent in presenting his or her testimony in person rather than by alternate means; (7) the affect of the parent's presence and personal participation in the proceedings upon the probability of his or her ultimate success on the merits; (8) the cost and inconvenience of transporting a parent from his or her place of incarceration to the courtroom; (9) any potential danger or security risk which may accompany the incarcerated parent's transportation to or presence at the proceedings; (10) the inconvenience or detriment to parties or witnesses; and (11) any other relevant factors.

Syl. pts. 10–11, *State ex rel. Jeanette H. v. Pancake*, 207 W.Va. 154, 529 S.E.2d 865 (2000). In the case *sub judice*, the circuit court did not consider whether Mr. R. should be permitted to participate in the adjudicatory hearing or whether such proceeding should be continued until his presence could be secured because, in short, the circuit court did not know that the reason for Mr. R.'s absence was his Kentucky incarceration. While we do not treat lightly an individual's right to receive the process which he/she is constitutionally due, we similarly do not expect our circuit court judges to serve as omnipotent soothsayers who can foretell the location of any party who is absent from proceedings held in their courtrooms.

When constitutionally-protected rights are involved in a particular case, we frequently have found that the party entitled to the protections thereof can also effectuate a forfeiture or waiver of such safeguards. *See, e.g., State ex rel. Miller v. Reed*, 203 W.Va. 673, 682, 510 S.E.2d 507, 516 (1998) (concluding that "[t]he failure of respondents ... to request an administrative hearing within the time provided by statute constituted a waiver of their right to do so and their [driver's] licenses were properly revoked"); *State v. Crabtree*, 198 W.Va. 620, 629, 482 S.E.2d 605, 614 (1996) (observing that a criminal defendant's right to be present at all critical stages of a criminal proceeding "is not absolute and can be waived by the voluntary action of the defendant" (citation omitted)); Syl. pt. 1, *State v. Crouch*, 178 W.Va. 221, 358 S.E.2d 782 (1987) ("For a recantation of a request for counsel to be effective: (1) the accused must initiate a conversation; and (2) must knowingly and intelligently, under the totality of the circumstances, waive his right to counsel."); *State ex rel. Arbogast v. Mohn*, 164 W.Va. 6, 13–14, 260 S.E.2d 820, 824–25 (1979) (recognizing that, when criminal penalties for offense are modified by Legislature, criminal defendant may waive right to elect under which statute he/she wishes to be sentenced); Syl. pt. 1, *State v. McArdle*, 156 W.Va. 409, 194 S.E.2d 174 (1973) ("Since waiver of juvenile jurisdiction is a critical stage in criminal proceedings against a juvenile, constitutional due process demands that the child, his parents and his counsel be afforded reasonable notice of the waiver hearing, the charge to be considered, a reasonable opportunity to prepare a defense to such waiver and a meaningful hearing at which evidence on behalf of the juvenile

should be permitted."). *Accord Dusanek v. Hannon,* 677 F.2d 538, 542–43 (7th Cir.1982) ("The availability of recourse to a constitutionally sufficient administrative procedure satisfies due process requirements if the complainant merely declines or fails to take advantage of the administrative procedure." (citations omitted)). *See also United States v. Tipton,* 90 F.3d 861, 872–76 (4th Cir.1996) (distinguishing between waiver of right and forfeiture of right resulting from failure to timely assert entitlement thereto). *But see, e.g., Abshire v. Cline,* 193 W.Va. 180, 455 S.E.2d 549 (1995) (refusing to find motorist had waived due process right to administrative hearing where neither attorney nor respondent was responsible for untimely request for continuance).

▉ This is particularly true where, as in the instant matter, the process that is due varies with the circumstances of the party seeking the protections thereof. For example, when a respondent parent to an abuse and neglect proceeding is incarcerated, additional procedural safeguards must be considered to ascertain whether he/she may physically participate in the attendant proceedings, whereas such concerns generally are not at issue when the respondent parent has not been confined. *See generally Jeanette H.,* 207 W.Va. 154, 529 S.E.2d 865. *Accord In re Emily B.,* 208 W.Va. 325, 331 n. 11, 540 S.E.2d 542, 548 n. 11 (2000). Nevertheless, when such protective measures are in place, " 'a state cannot be held to have violated due process requirements when it made procedural protection[s] available and the [complaining party] has simply refused

to avail himself of them." ' *Heston v. Marion County Parks & Recreation Comm'n,* 181 W.Va. 138, 143 n. 6, 381 S.E.2d 253, 258 n. 6 (1989) (per curiam) (quoting *Dusanek v. Hannon,* 677 F.2d at 543) (additional citations omitted).

▉ In the proceedings underlying the instant appeal, Mr. R. was entitled to have the circuit court consider whether he could be released from his Kentucky incarceration for the limited purpose of attending the West Virginia adjudicatory hearing regarding Stephen. *See* Syl. pts. 10–11, *Jeanette H.,* 207 W.Va. 154, 529 S.E.2d 865. Our holding in this regard, though, presupposes that the presiding circuit court has knowledge of said respondent parent's confinement through the communication of such fact by either the parent, him/herself, or the parent's attorney.[9] *See, e.g., id.,* 207 W.Va. at 159, 529 S.E.2d at 870 (discussing proposed order Jeanette sent to Cabell County Circuit Court "directing her transportation from the McDowell County Jail so that she might attend the [Cabell County abuse and neglect] proceedings"). Given that the preeminent concern in abuse and neglect proceedings is the best interests of the child(ren) subject thereto[10] and the speedy resolution thereof[11], it seems unduly burdensome to require circuit courts to conduct an inquiry as to the whereabouts of every respondent parent who fails to appear for a scheduled hearing in order to ascertain whether their absence is attributable to incarceration and whether, as a result of such confinement, they should be afforded further procedural protections attendant thereto.

---

**9.** "In child neglect proceedings which may result in the termination of parental rights to the custody of natural children, indigent parents are entitled to the assistance of counsel because of the requirements of the Due Process clauses of the West Virginia and United States Constitutions." Syl. pt. 1, *State ex rel. Lemaster v. Oakley,* 157 W.Va. 590, 203 S.E.2d 140 (1974). *See also* W. Va.Code § 49-6-2(a) (1996) (Repl.Vol.2001) ("In any proceeding under the provisions of this article, ... [the child's] parents ... shall have the right to be represented by counsel at every stage of the proceedings[.]"); Syl. pt. 8, in part, *In re Lindsey C.,* 196 W.Va. 395, 473 S.E.2d 110 (1995) ("Circuit courts should appoint counsel for parents and custodians required to be named as respondents in abuse and neglect proceedings

*incident to the filing of each abuse and neglect petition."* (emphasis in original)).

**10.** "Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." Syl. pt. 3, *In re Katie S.,* 198 W.Va. 79, 479 S.E.2d 589 (1996).

**11.** "Child abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. Unjustified procedural delays wreak havoc on a child's development, stability and security." Syl. pt. 1, in part, *In re Carlita B.,* 185 W.Va. 613, 408 S.E.2d 365 (1991).

Rather, we find that the better course is to require the party seeking the benefit of additional safeguards to affirmatively notify the presiding tribunal of the facts which may require the court to invoke such protective measures.[12] Such a procedure will thus adequately protect the respondent parent's interests in his/her parental rights to his/her child(ren)[13] without hindering the overwhelming policy of resolving abuse and neglect matters promptly in order to secure the subject child(ren)'s safety and well-being.[14] Accordingly, we hold that, in order to activate the procedural protections enunciated in Syllabus points 10 and 11 of *State ex rel. Jeanette H. v. Pancake*, 207 W.Va. 154, 529 S.E.2d 865 (2000), an incarcerated parent who is a respondent to an abuse and neglect proceeding must inform the circuit court in which such case is pending that he/she is incarcerated and request the court's permission to attend the hearing(s) scheduled therein. Once the circuit court has been so notified, by the respondent parent individually or by the respondent parent's counsel, the determination of whether to permit the incarcerated parent to attend such hearing(s) rests in the court's sound discretion.

It is undisputed that Mr. R. received notice of the adjudicatory hearing at issue in this assignment of error, and that, in spite of his absence therefrom, he was represented by counsel at that hearing.[15] However, during the proceedings underlying the instant appeal, Mr. R. failed to notify either the Circuit Court of Raleigh County or his counsel that he would be absent from the adjudicatory hearing because he was incarcerated in Kentucky. Neither does the record evidence a request by Mr. R. that the Raleigh County proceedings be continued until a determination had been made as to whether he could be released from confinement for the limited purpose of attending and participating in the adjudicatory hearing. In the absence of even the slightest communication of this fact to the presiding tribunal or his legal representative, we are reluctant to find that Mr. R. acted to invoke the safeguards necessary to protect his due process rights in this regard. Moreover, further postponement of the adjudicatory hearing, without knowledge of Mr. R.'s confinement and the attendant analysis provided by *Jeanette H.*, would have been improper considering the fact that this hear-

12. We have recognized a similar duty to exist in administrative proceedings wherein we have required an aggrieved party who wishes to benefit from certain procedural protections to alert the presiding tribunal as to their applicability. *See, e.g.,* Syl. pt. 4, *Hanlon v. Logan County Bd. of Educ.*, 201 W.Va. 305, 496 S.E.2d 447 (1997) ("In order to benefit from the 'relief by default' provisions contained in W. Va.Code § 18–29–3(a) (1992) (Repl.Vol.1994), an aggrieved employee or his/her representative must raise the 'relief by default' issue during the grievance proceedings as soon as the employee or his/her representative becomes aware of such default."). *See also Alden v. Harpers Ferry Police Civil Serv. Comm'n*, 209 W.Va. 83, 88 n. 13, 543 S.E.2d 364, 369 n. 13 (2001) ("recommend[ing] that future civil service officers observe basic concepts of fairness and judicial economy by timely filing a request [for a pre-termination hearing] when their employers fail to honor their statutory rights" (citation omitted)).

13. "In the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States

Constitutions." Syl. pt. 1, *In re Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973). *See also* W. Va.Code § 49–6–2(c) ("In any proceeding pursuant to the provisions of this article, the party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses."); Syl. pt. 2, *In re Willis*, 157 W.Va. 225, 207 S.E.2d 129 ("West Virginia Code, Chapter 49, Article 6, Section 2, as amended, and the Due Process Clauses of the West Virginia and United States Constitutions prohibit a court or other arm of the State from terminating the parental rights of a natural parent having legal custody of his child, without notice and the opportunity for a meaningful hearing."); Syl. pt. 4, *In re Sutton*, 132 W.Va. 875, 53 S.E.2d 839 (1949) ("A parent having legal custody of his child (Acts of the Legislature, 1941, Chapter 73, Article 6, Section 2) cannot be divested of parental rights without notice and an opportunity for hearing.").

14. *See supra* notes 10 & 11.

15. Additionally, counsel for Mr. R. objected to the hearing proceeding in her client's absence, and presented evidence and cross-examined witnesses on Mr. R.'s behalf.

ing had already been continued from April 20, 2001, until June 8, 2001, and the over-riding concern that abuse and neglect matters should be promptly resolved.[16] *See* W. Va. R. Proc. for Child Abuse & Neglect Proceed. 7 (requiring good cause be shown for continuance of proceedings). Accordingly, we affirm the circuit court's decision to hold the adjudicatory hearing in Mr. R.'s absence and its resultant ruling.

### B. Findings of Abuse and/or Neglect

 For his second assignment of error, Mr. R. complains that the circuit court improperly found that he had abused and/or neglected his son, Stephen, and concluded that he was not likely to substantially correct such conditions of abuse and/or neglect.[17] In this regard, Mr. R. asserts that the allegations against him, that he had allegedly battered Ms. S. in Stephen's presence and that he was using marijuana during the case worker's February 14, 2001, visit to his home, do not constitute abuse and/or neglect as those terms are defined by the governing statute. *Citing* W. Va.Code § 49–1–3 (1999) (Repl.Vol.2001). Mr. R. also suggests that DHHR failed to adhere to its statutory duty to make every reasonable effort to reunite and preserve the family unit. *Citing* W. Va.Code § 49–6–12(i) (1996) (Repl.Vol.2001)

(charging DHHR with responsibility of "mak[ing] reasonable efforts to reunify [the] family"); W. Va.Code § 49–6D–2(a)(2) (1984) (Repl.Vol.2001) (recognizing purposes of chapter as including duty of State to "preserve and strengthen the family ties wherever possible, while recognizing both the fundamental rights of parenthood and the State's responsibility to assist the family"); *State ex rel. W. Va. Dep't of Human Servs. v. Cheryl M.*, 177 W.Va. 688, 356 S.E.2d 181 (1987). Responding to Mr. R.'s contentions, DHHR asserts that the circuit court properly found Stephen to be an abused and/or neglected child.

At issue in this assignment of error is whether the evidence presented to the circuit court supports a finding that Mr. R. had abused and/or neglected his son. W. Va. Code § 49–1–3 (1999) (Repl.Vol.2001) enumerates the criteria for making such a determination:

(a) "Abused child" means a child whose health or welfare is harmed or threatened by:

(1) A parent, guardian or custodian who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to inflict, physical injury or men-

---

16. *See supra* note 11 and accompanying text.

17. Additionally, Mr. R. complains that the circuit court did not timely enter the dispositional order in this case as required by Rule 36 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings. *See* W. Va. R. Proc. for Child Abuse & Neglect Proceed. 36(a) ("At the conclusion of the disposition hearing, the court shall make findings of fact and conclusions of law, in writing or on the record, as to the appropriate disposition in accordance with the provisions of W. Va.Code § 49–6–5. The court shall enter a disposition order, including findings of fact and conclusions of law, *within ten (10) days of the conclusion of the hearing.*" (emphasis added)). In support of this argument, Mr. R. represents that the order was required to be entered within ten days of the September 12, 2001, dispositional hearing, but was in fact entered on November 27, 2001, which was approximately two and one-half months after the hearing date. While we agree with Mr. R.'s interpretation of this procedural rule, we do not find that the circuit court's delay in entering its order constitutes reversible error.

We previously have held that

[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order.

Syl. pt. 5, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001). Although we find that the temporal requirements for the entry of a dispositional order were not satisfied in this case, such error is harmless as the delay did not substantially frustrate the purpose of such procedural rules. *See* W. Va. R. Proc. for Child Abuse & Neglect Proceed. 2 ("These rules shall be liberally construed to achieve safe, stable, secure permanent homes for abused and/or neglected children and fairness to all litigants. These rules are not to be applied or enforced in any manner which will endanger or harm a child...."). Nevertheless, we admonish courts in which abuse and neglect cases are pending to be ever vigilant and mindful of the procedural rules governing such proceedings in order that the purpose thereof not be defeated.

tal or emotional injury, upon the child or another child in the home; or

(2) Sexual abuse or sexual exploitation; or

(3) The sale or attempted sale of a child by a parent, guardian or custodian in violation of section sixteen [§ 48–4–16], article four, chapter forty-eight of this code.

In addition to its broader meaning, physical injury may include an injury to the child as a result of excessive corporal punishment.

. . . .

(c) "Child abuse and neglect" or "child abuse or neglect" means physical injury, mental or emotional injury, sexual abuse, sexual exploitation, sale or attempted sale or negligent treatment or maltreatment of a child by a parent, guardian or custodian who is responsible for the child's welfare, under circumstances which harm or threaten the health and welfare of the child.

. . . .

(h) (1) "Neglected child" means a child:

(A) Whose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when such refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian; or

(B) Who is presently without necessary food, clothing, shelter, medical care, education or supervision because of the disappearance or absence of the child's parent or custodian;

(2) "Neglected child" does not mean a child whose education is conducted within the provisions of section one [§ 18–8–1], article eight, chapter eighteen of this code.

In evaluating the evidence presented on the issue of a child's abuse and/or neglect,

the court shall consider the efforts of the state department to remedy the alleged circumstances. At the conclusion of the hearing the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected, which shall be incorporated into the order of the court. The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing proof.

W. Va.Code § 49–6–2(c) (1996) (Repl.Vol. 2001).

Where, however, the court makes

a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future, and when necessary for the welfare of the child, [the court shall] terminate the parental, custodial or guardianship rights and/or responsibilities of the abusing parent and commit the child to the permanent sole custody of the nonabusing parent, if there be one, or, if not, to either the permanent guardianship of the department or a licensed child welfare agency.

W. Va.Code § 49–6–5(a)(6) (1998) (Repl.Vol. 2001).[18] *Accord* Syl. pt. 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980) ("Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, *W. Va.Code*, 49–6–5 [1977] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under *W. Va.Code*, 49–6–5(b) [1977] that conditions of neglect or abuse can be substantially corrected.").

In pertinent part,

"no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" . . . mean[s] that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of

---

**18.** Since the time the proceedings underlying the instant appeal were initiated, the Legislature has amended W. Va.Code § 49–6–5. *Compare* W. Va.Code § 49–6–5 (1998) (Repl.Vol.2001) *with* W. Va.Code § 49–6–5 (2002) (Supp.2003). Although the amendments were generally stylistic, rather than substantive, in nature, we will nevertheless base our decision herein upon the former version of this statute as that is the law that existed at the time of the relevant events in this case.

abuse or neglect, on their own or with help. Such conditions shall be deemed to exist in the following circumstances, which shall not be exclusive:

(1) The abusing parent or parents have habitually abused or are addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and such person or persons have not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning;

(2) The abusing parent or parents have willfully refused or are presently unwilling to cooperate in the development of a reasonable family case plan designed to lead to the child's return to their care, custody and control;

(3) The abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child;

. . . .

(5) The abusing parent or parents have repeatedly or seriously injured the child physically or emotionally, or have sexually abused or sexually exploited the child, and the degree of family stress and the potential for further abuse and neglect are so great as to preclude the use of resources to mitigate or resolve family problems or assist the abusing parent or parents in fulfilling their responsibilities to the child[.]

W. Va.Code § 49–6–5(b).

During the proceedings underlying the instant appeal, the circuit court considered the evidence presented on behalf of Mr. R. as well as that submitted by DHHR. The court ultimately determined, by adjudicatory order entered July 13, 2001, that Mr. R. had abused and/or neglected Stephen and rendered findings of fact evidencing this conclusion:

The continued residence of the infant child in the home and in the care and custody by the Respondent Father is contrary to the best interest of the child for reasons stated herein.

That the danger presented by the infant child's present circumstances creates an emergency situation making efforts to avoid removing the child from the home unreasonable or impossible;

That there are no reasonable, available, and less drastic alternatives to removing the child from custody by the Respondent Father;

. . . .

That the conduct of the respondent father's violence toward the respondent mother has been more than one time and at least once in the presence of the infant child;

That the November 19, 2000, incident was a planned methodical beating in the presence of the infant child without regard for the infant child nor the respondent mother's welfare;

That [the] evidence supports the fact that the respondent father has subjected the infant child to abuse and/or neglect, therefore the respondent father has abused and neglected the infant child in respect to his conduct;

That the infant child suffers from being in the environment created by the respondent father[.]

Based upon these findings, and the additional record evidence of Mr. R.'s repeated unwillingness to cooperate in the development and execution of a family case plan, we do not conclude that the circuit court erred by determining that Mr. R. had abused and/or neglected his son. Perhaps the most disturbing evidence of such abuse is the incident referenced in the circuit court's findings in which Mr. R. not only battered Ms. S., but did so while she was holding Stephen, who was then only seven months old, in her arms. *See* W. Va.Code § 48–27–101(a)(2) (2001) (Repl.Vol.2001) (recognizing that "[c]hildren . . . [who] witness violence against one of their parents . . . . may suffer deep and lasting emotional harm . . . from [such] exposure to domestic violence"); Syl. pt. 8, in part, *In*

*re Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991) ("Prior acts of violence, physical abuse, or emotional abuse . . . are relevant in a termination of parental rights proceeding[.]"). *See also Nancy Viola R. v. Randolph W.*, 177 W.Va. 710, 714, 356 S.E.2d 464, 468 (1987) ("[S]pousal abuse is a factor to be considered in determining parental fitness for child custody." (citation omitted)); *Collins v. Collins*, 171 W.Va. 126, 297 S.E.2d 901 (1982) (per curiam) (finding that child's mother who had committed acts of domestic violence was unfit custodian for child). Additional record evidence indicated that Mr. R. used marijuana in his son's presence, which can also support a finding of abuse and neglect. *See, e.g., In re Aaron Thomas M.*, 212 W.Va. 604, 609, 575 S.E.2d 214, 219 (2002) (per curiam) (upholding circuit court's finding that "children were emotionally abused by [mother's] repeated drug use in their presence"). Finding no reversible error, we affirm the circuit court's finding that Mr. R. had abused and/or neglected Stephen.

Furthermore, the record is replete with testimony from Mr. R., himself, as well as from professionals who have examined him, indicating that he does not believe he should undergo therapy to manage his anger and evidencing his unwillingness to cooperate in family case plans designed to improve the stability of the family structure in order to provide a safe and suitable home environment for Stephen. Not only does this lack of cooperation delay the correction of the problems initially identified by DHHR in its petition for abuse and/or neglect as being harmful to Stephen, but such blatant refusal to participate in these plans, in and of itself, suggests that an improvement period would be highly unsuccessful and constitutes grounds for termination of parental rights. *See, e.g.*, W. Va.Code §§ 49–6–5(b)(2–3) (stating that "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" is deemed to exist when the abusing parent refuses to cooperate in the development of a family case plan or has not complied with said family case plan or other rehabilitative services designed to correct such conditions of abuse and/or neglect). *Cf. State ex rel. Virginia M. v. Virgil Eugene S. II*, 197 W.Va. 456, 461, 475 S.E.2d 548, 553

(1996) (per curiam) (indicating that "one instance of alleged abuse . . . . does not constitute the 'compelling circumstances' sufficient to deny the natural mother . . . any chance for rehabilitation" and, thus, granting mother improvement period).

Additionally, DHHR presented evidence that, during its lengthy involvement with this family, Mr. R. has failed to attend scheduled visitations with Stephen provided by various voluntary family treatment plans. This evidence also suggests that an improvement period is not warranted in this case. *See In re Carlita B.*, 185 W.Va. at 628, 408 S.E.2d at 380 ("A parent's level of interest in visiting with his or her child during an out-of-home improvement period is an extremely significant factor for the circuit court to review."). In sum,

> courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements.

Syl. pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114. *See also* W. Va.Code § 49–6–12 (1996) (Repl.Vol.2001) (conditioning grant of improvement periods, at all stages of abuse and neglect proceedings, upon clear and convincing evidence that parent will fully participate therein). Based upon the circuit court's findings and the record evidence in this case, we find that Mr. R. was not likely to substantially correct the conditions of abuse and/or neglect with which he had been charged and that granting him an improvement period would have been a futile gesture. Finding that the circuit court did not commit reversible error by denying Mr. R. an improvement period, we affirm the court's ruling in this regard.

### C. Continuing Duty to Support Child after Termination of Parental Rights

Lastly, Mr. R. argues that the circuit court erred by continuing his obligation

to pay child support for Stephen even though it terminated his parental rights to this child. In rendering its dispositional ruling in this matter, the circuit court ordered "[t]hat it is in the best interest of the infant child that the parental rights of Robert [R.] are hereby **TERMINATED** and forever gone as to the infant child, Stephen Tyler [R.], *but for his duty to pay child support for said infant child.*" (Emphasis added). On appeal to this Court, Mr. R. complains that the circuit court's ruling is fundamentally unfair because he no longer has the right to visit with his son. He further suggests that future inequities could occur if he is required to pay child support and someone ultimately adopts Stephen; under this scenario, Mr. R. argues that the adoptive parent could then enjoy the rights and benefits of parenthood without also having to pay for Stephen's support and maintenance. Finally, Mr. R. asserts that a continuing duty of support is inconsistent with the complete severance of parental rights and the cessation of contact between the child and such parent. *Citing* W. Va. Code § 49–1–3(o) (defining "parental rights" as "any and all rights and duties regarding a parent to a minor child, including, but not limited to, custodial rights and visitational rights and rights to participate in the decisions affecting a minor child"). By contrast, DHHR contends that the circuit court did not abuse its discretion by ordering Mr. R. to pay child support for Stephen after it terminated his parental rights because a parent is obligated to support his or her child. *Citing Wyatt v. Wyatt*, 185 W.Va. 472, 408 S.E.2d 51 (1991). Moreover, DHHR states that the circuit court's ultimate disposition in abuse and neglect proceedings is discretionary, and may include the termination of parental rights and/or responsibilities. *Citing* W. Va. Code § 49–6–5(a)(6).

W. Va.Code § 49–6–5 (1998) (Repl.Vol. 2001) is the statutory provision that governs final dispositions in abuse and neglect proceedings. Pursuant to its terms,

[t]he court shall give precedence to dispositions in the following sequence:

(1) Dismiss the petition;

(2) Refer the child, the abusing parent, or other family members to a community agency for needed assistance and dismiss the petition;

(3) Return the child to his or her own home under supervision of the department;

(4) Order terms of supervision calculated to assist the child and any abusing parent or parents or custodian which prescribe the manner of supervision and care of the child and which are within the ability of any parent or parents or custodian to perform;

(5) Upon a finding that the abusing parent or parents are presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the custody of the state department, a licensed private child welfare agency or a suitable person who may be appointed guardian by the court.... The court order shall also determine under what circumstances the child's commitment to the department shall continue.... The court may order services to meet the special needs of the child. Whenever the court transfers custody of a youth to the department, an appropriate order of financial support by the parents or guardians shall be entered in accordance with section five [§ 49–7–5], article seven of this chapter; or

(6) Upon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future, and when necessary for the welfare of the child, terminate the parental, custodial or guardianship rights and/or responsibilities of the abusing parent and commit the child to the permanent sole custody of the nonabusing parent, if there be one, or, if not, to either the permanent guardianship of the department or a licensed child welfare agency[.]

W. Va.Code §§ 49–6–5(a)(1–6). *Cf.* W. Va. Code § 49–6–5b (1998) (Repl.Vol.2001) (delineating circumstances in which circuit court is required to terminate parental rights). It is the most drastic of these alternatives, the complete termination of a parent's parental rights to his/her child(ren), to which the court resorted in the case *sub judice* and from which Mr. R. now appeals. Thus, we must now consider whether the applicable statutory provision, W. Va.Code § 49–6–

5(a)(6), permits a circuit court to terminate a parent's parental rights while continuing his/her obligation to pay child support for the child to which his/her rights have been terminated.

When called upon to discern the meaning of a legislative enactment, this Court resorts to well-accepted rules of statutory construction. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). In order to determine this legislative intent, we must consider the precise language employed by the Legislature in promulgating the statutory provision enactment at issue. "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968). *Accord* Syl. pt. 1, *State v. Jarvis*, 199 W.Va. 635, 487 S.E.2d 293 (1997) (" 'A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.' Syl. Pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951)."); *State ex rel. Roy Allen S. v. Stone*, 196 W.Va. 624, 630, 474 S.E.2d 554, 560 (1996) ("We look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." (internal quotations and citation omitted) (footnote omitted)).

Turning now to the case *sub judice*, the specific statutory provision upon which the circuit court relied in rendering its disposition is subsection (a)(6) of W. Va.Code § 49-6-5. This language provides, in pertinent part,

> [t]he court shall give precedence to dispositions in the following sequence:
>
> . . . .
>
> [u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future, and when necessary for the welfare of the child, *terminate the parental, custodial or guardianship rights and/or responsibilities of the abusing parent* and commit the child to the permanent sole custody of the nonabusing parent, if there be one, or, if not, to either the permanent guardianship of the department or a licensed child welfare agency[.]

W. Va.Code § 49-6-5(a)(6) (emphasis added). The plain language of this statute affords the circuit court the options of either terminating the abusing parent's parental rights, terminating his/her responsibilities, or terminating both the parent's parental rights and responsibilities. *See id.* "Parental rights" are defined by the Legislature to "mean[ ] any and all rights and duties regarding a parent to a minor child, including, but not limited to, custodial rights and visitational rights and rights to participate in the decisions affecting a minor child." W. Va.Code § 49-1-3(*o*). However, the "responsibilities" to which W. Va.Code § 49-6-5(a)(6) refers have not been so defined.

Where, as here, a word employed in a statute is not specifically defined by the Legislature, we resort to the commonly accepted usage of that term. "Each word of a statute should be given some effect and a statute must be construed in accordance with the import of its language. Undefined words and terms used in a legislative enactment will be given their common, ordinary and accepted meaning." Syl. pt. 6, in part, *State ex rel. Cohen v. Manchin*, 175 W.Va. 525, 336 S.E.2d 171 (1984). *Accord* Syl. pt. 4, *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W.Va. 137, 107 S.E.2d 353 (1959) ("Generally the words of a statute are to be given their ordinary and familiar significance and meaning, and regard is to be had for their general and proper use."). Our inquiry, then, is whether the realm of parental responsibilities referenced in W. Va.Code § 49-6-5(a)(6) contemplates the obligation of child support.

A parent's duty to support his/her child(ren) has long been recognized to be an integral part of the rubric of parental responsibilities. "The duty of a parent to support a child is a basic duty owed by the parent to the child[.]" Syl. pt. 3, in part, *Wyatt v. Wyatt*, 185 W.Va. 472, 408 S.E.2d 51

(1991). Stated otherwise, "[p]rovision of shelter and financial support for children is one of the most basic components of parental responsibility." *In re Jamie Nicole H.*, 205 W.Va. 176, 183, 517 S.E.2d 41, 48 (1999). The Legislature, too, has recognized the extreme importance of providing support for one's own child(ren). "It is the intent of the Legislature that to the extent practicable, the laws of this state should encourage and require a child's parents to meet the obligation of providing that child with adequate food, shelter, clothing, education, and health and child care." W. Va.Code § 48–11–101(a) (2001) (Repl.Vol.2001). Such an "obligation of child support is grounded in the moral and legal duty of support of one's children from the time of birth." *Supcoe v. Shearer*, 204 W.Va. 326, 330, 512 S.E.2d 583, 587 (1998) (per curiam). In fact, the duty of support is recognized as being so inherently a parental responsibility that a parent who fails to fulfill this obligation can be sanctioned with criminal penalties. *See* W. Va.Code § 61–5–29 (1999) (Repl.Vol.2000) (enumerating elements for crime of "[f]ailure to meet an obligation to provide support to a minor" and establishing penalties therefor).[19] *Accord* 18 U.S.C. § 228 (1998) (2000 ed.) (defining instances in which "[f]ailure to pay legal child support obligations" constitutes a federal criminal offense).[20] *See also State ex rel. West Virginia*

19. The complete text of W. Va.Code § 61–5–29 (1999) (Repl.Vol.2000) provides:

(1) A person who: (a) Persistently fails to provide support which he or she can reasonably provide and which he or she knows he or she has a duty to provide to a minor; or (b) is subject to court order to pay any amount for the support of a minor child and is delinquent in meeting the full obligation established by the order and has been delinquent for a period of at least six months' duration, is guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than one hundred dollars nor more than one thousand dollars, or confined in the county or regional jail for not more than one year, or both fined and confined.

(2) A person who persistently fails to provide support which he or she can reasonably provide and which he or she knows he or she has a duty to provide to a minor by virtue of a court or administrative order and the failure results in: (a) An arrearage of not less than eight thousand dollars; or (b) twelve consecutive months without payment of support, is guilty of a felony and, upon conviction thereof, shall be fined not less than one hundred dollars nor more than one thousand dollars, or imprisoned for not less than one year nor more than three years, or both fined and imprisoned.

(3) In a prosecution under this section, the defendant's alleged inability to reasonably provide the required support may be raised only as an affirmative defense, after reasonable notice to the state.

20. Title 18, section 228 of the United States Code imposes criminal penalties for the "[f]ailure to pay legal child support obligations":

(a) Offense.-Any person who-

(1) willfully fails to pay a support obligation with respect to a child who resides in another State, if such obligation has remained unpaid for a period longer than 1 year, or is greater than $5,000;

(2) travels in interstate or foreign commerce with the intent to evade a support obligation, if such obligation has remained unpaid for a period longer than 1 year, or is greater than $5,000; or

(3) willfully fails to pay a support obligation with respect to a child who resides in another State, if such obligation has remained unpaid for a period longer than 2 years, or is greater than $10,000;

shall be punished as provided in subsection (c).

(b) Presumption.-The existence of a support obligation that was in effect for the time period charged in the indictment or information creates a rebuttable presumption that the obligor has the ability to pay the support obligation for that time period.

(c) Punishment.-The punishment for an offense under this section is-

(1) in the case of a first offense under subsection (a)(1), a fine under this title, imprisonment for not more than 6 months, or both; and

(2) in the case of an offense under paragraph (2) or (3) of subsection (a), or a second or subsequent offense under subsection (a)(1), a fine under this title, imprisonment for not more than 2 years, or both.

(d) Mandatory restitution.-Upon a conviction under this section, the court shall order restitution under section 3663A in an amount equal to the total unpaid support obligation as it exists at the time of sentencing.

(e) Venue.-With respect to an offense under this section, an action may be inquired of and prosecuted in a district court of the United States for-

(1) the district in which the child who is the subject of the support obligation involved resided during a period during which a person described in subsection (a) (referred to in this subsection as an "obliger") failed to meet that support obligation;

(2) the district in which the obliger resided during a period described in paragraph (1); or

*Dep't of Health & Human Res., Child Support Enforcement Div. v. Michael George K.*, 207 W.Va. 290, 295, 531 S.E.2d 669, 674 (2000) ("The State has a broad role in the enforcement of child support[.]"). Thus, it goes without saying that the responsibilities contemplated by W. Va.Code § 49-6-5(a)(6) most certainly include the obligation to pay child support. Accordingly, we hold that, pursuant to the plain language of W. Va.Code § 49-6-5(a)(6) (1998) (Repl.Vol.2001), a circuit court may enter a dispositional order in an abuse and neglect case that simultaneously terminates a parent's parental rights while also requiring said parent to continue paying child support for the child(ren) subject thereto.[21]

Applying this statutory construction to the case *sub judice*, we find that the circuit court did not err by both terminating Mr. R.'s parental rights and continuing his obligation to support Stephen as such disposition was clearly authorized by W. Va.Code § 49-6-5(a)(6). In presenting his arguments on this point to the Court, however, Mr. R. has raised several legitimate concerns which already have been adequately addressed by coordinate statutory provisions but which nevertheless warrant clarification herein.

 The first such contention raised by Mr. R. is his assertion that the circuit court's decision to continue his support obligation is patently unfair when he no longer has the right to visit or otherwise have contact with his son. We begin by reiterating our earlier observation to the effect that "the duty to pay child support and the right to exercise visitation are not interdependent." *Carter v. Carter*, 198 W.Va. 171, 177, 479 S.E.2d 681,

687 (1996). Moreover, our decision herein is consistent with the Legislature's intended disposition of abuse and neglect cases. Under W. Va.Code § 49-6-5(a)(6), discussed above, the presiding circuit court is granted the authority to choose between the alternatives of terminating parental rights and/or parental responsibilities to achieve the result appropriate in a particular case. However, the dispositional alternative enumerated in W. Va.Code § 49-6-5(a)(5) specifically commands the court selecting this disposition to enter "an appropriate order of financial support by the parents or guardians" even though this alternative also entails the temporary transfer of custody of the subject child(ren) to a guardian other than the child(ren)'s parents. *See also* W. Va.Code § 49-7-5 (1936) (Repl.Vol.2001) (ordering "person [who is] legally liable for the support of [a] child [who has been placed in home, institution, or under guardianship] [and who] is able to contribute to the support of such child ... to pay ... a reasonable sum from time to time for the support, maintenance, and education of the child").

 This emphasis on the child(ren)'s right to receive support, rather than on his/her parent's right to retain custody or visitation privileges, is based on the fact that "child support payments are exclusively for the benefit and economic best interest of the child." *Carter v. Carter*, 198 W.Va. at 176, 479 S.E.2d at 686 (citations omitted). *Accord Supcoe v. Shearer*, 204 W.Va. at 330, 512 S.E.2d at 587 ("[C]hild support is for the benefit of the child[.]"); *Lang v. Iams*, 201 W.Va. 24, 28, 491 S.E.2d 24, 28 (1997) (per curiam) ("An initial child support order is

---

(3) any other district with jurisdiction otherwise provided for by law.

(f) Definitions.-As used in this section-

(1) the term "Indian tribe" has the meaning given that term in section 102 of the Federally Recognized Indian Tribe List Act of 1994 (25 U.S.C. 479a);

(2) the term "State" includes any State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States; and

(3) the term "support obligation" means any amount determined under a court order or an order of an administrative process pursuant to the law of a State or of an Indian tribe to be due from a person for the support and mainte-

nance of a child or of a child and the parent with whom the child is living.

18 U.S.C. § 228 (1998) (2000 ed.).

**21.** It should be noted, however, that this holding is limited to those cases involving child support obligations in abuse and neglect proceedings. Thus, based upon the narrow scope of the governing statute, W. Va.Code § 49-6-5(a)(6), our decision herein should not be construed as determinative of the propriety, or impropriety, of child support awards in other contexts. *See Rebecca Lynn C. v. Michael Joseph B.*, 213 W. Va. 744, 746, n. 4, 584 S.E.2d 600, 602, slip op. n. 4 (2003) (per curiam).

entered for the benefit of the child or children involved."). *See also Carter,* 198 W.Va. at 176, 479 S.E.2d at 686 ("A fundamental concept in the public policy of this State is that the best interest and welfare of the children are paramount when deciding matters of visitation, child support and child custody." (citations omitted)). Above all, "[c]ases involving children must be decided not just in the context of competing sets of adults' rights, but also with a regard for the rights of the child(ren)." Syl. pt. 7, *In re Brian D.,* 194 W.Va. 623, 461 S.E.2d 129 (1995).

Mr. R. also suggests that the continuation of his support obligation could have inequitable consequences if Stephen is ultimately adopted by another individual.[22] In this scenario, Mr. R. contends that the adoptive parent would then essentially be relieved of his/her obligation to support Stephen because such responsibility had already been attributed to Mr. R. Again, though, the Legislature has foreseen and definitively addressed this quandary.

 Although seemingly final, dispositions made in accordance with W. Va.Code § 49–6–5 may subsequently be modified. W. Va.Code § 49–6–6 (1977) (Repl.Vol.2001) directs

> [u]pon motion of a child, a child's parent or custodian or the state department alleging a change of circumstances requiring a different disposition, the court shall conduct a hearing pursuant to section two [§ 49–6–2] of this article and may modify a dispositional order: Provided, That a dispositional order pursuant to subdivision (6), subsection (a) of section five [§ 49–6–5(a)(6) ] shall not be modified after the child has been adopted. Adequate and timely notice of any motion for modification shall be given to the child's counsel,

counsel for the child's parent or custodian and to the state department.

Where, as here, multiple statutes relate to the same general body of law, they must be read consistently with one another. "Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syl. pt. 3, *Smith v. State Workmen's Comp. Comm'r,* 159 W.Va. 108, 219 S.E.2d 361. *Accord* Syl. pt. 2, in part, *Beckley v. Kirk,* 193 W.Va. 258, 455 S.E.2d 817 (1995) ("Statutes in pari materia, [sic] must be construed together and the legislative intention, as gathered from the whole of the enactments, must be given effect." (internal quotations and citations omitted)); Syl. pt. 5, in part, *Fruehauf Corp. v. Huntington Moving & Storage Co.,* 159 W.Va. 14, 217 S.E.2d 907 (1975) ("Statutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in *pari materia* to assure recognition and implementation of the legislative intent.").

 Reading W. Va.Code § 49–6–6 in conjunction with W. Va.Code § 49–6–5 leads to the logical conclusion that a modification motion may be made to request the presiding court to review a disposition that has imposed upon a parent an obligation to provide support for his/her child. Therefore, we hold that a circuit court may, in the course of modifying a previously-entered dispositional order in an abuse and neglect case in accordance with W. Va.Code § 49–6–6 (1977) (Repl.Vol.2001), amend a parent's continuing child support obligation or the amount thereof.[23] The court may not, however, modify said dispositional order to cancel accrued child support or decretal judgments resulting

---

**22.** It goes without saying, however, that Mr. R.'s argument on this point, and our analysis thereof, pertains only to the limited context of adoptions of children whose parent's parental rights have been terminated as a result of abuse and/or neglect proceedings. Our discussion herein does not apply to adoptions generally or to cases involving the voluntary relinquishment of parental rights.

**23.** Permitting a court to modify child support awards in abuse and neglect cases is consistent with the statutory law permitting such modification in other domestic matters. *See generally* W. Va.Code § 48–11–105(a) (2001) (Supp.2003) (allowing court to modify child support order upon proper motion demonstrating "a change in the circumstances of a parent or another proper person or persons").

from child support arrearages.[24]

Having found the circuit court's order terminating Mr. R.'s parental rights while continuing his support obligation to have been within the court's statutory authority to render dispositions in abuse and neglect cases, we find no reversible error and affirm the circuit court's ruling to that effect.

## IV.

## CONCLUSION

For the foregoing reasons, we find that the circuit court did not commit reversible error by holding the adjudicatory hearing in Robert R.'s absence; finding Mr. R. to be responsible for the abuse and/or neglect of his son, Stephen Tyler R.; and ordering Mr. R. to continue paying child support following the termination of his parental rights to his son. Accordingly, the November 27, 2001, order of the Circuit Court of Raleigh County is hereby affirmed.

Affirmed.

---

**24.** Such a limitation upon the circuit court's ability to modify orders of support has been explicitly stated by both this Court and by the Legislature. *See, e.g.,* W. Va.Code § 48-1-204 (2001) (Repl.Vol.2001) ("[A] child support order may not be retroactively modified so as to cancel or alter accrued installments of support."); Syl. pt. 2, in part, *Goff v. Goff,* 177 W.Va. 742, 356 S.E.2d 496 (1987) ("The authority of the circuit courts to modify ... child support awards is prospective only and, absent a showing of fraud or other judicially cognizable circumstance in procuring the original award, a circuit court is without authority to modify or cancel accrued ... child support installments."); Syl. pt. 2, *Horton v. Horton,* 164 W.Va. 358, 264 S.E.2d 160 (1980) (per curiam) ("A circuit court lacks the power to alter or cancel accrued installments for child support."). *See also* W. Va.Code § 48-1-204 ("[T]he total of any matured, unpaid installments of child support required to be paid by an order entered or modified by a court of competent jurisdiction, or by the order of a magistrate court of this state, ... shall stand, by operation of law, as a decretal judgment against the obligor owing such support."); *Carter v. Carter,* 198 W.Va. 171, 175, 479 S.E.2d 681, 685 (1996) ("[C]hild support payments vest as they accrue, and matured installments thereof stand as decretal judgments against the party owing such support payments." (internal quotations and citation omitted)); Syl. pt. 1, in part, *Goff v. Goff,* 177 W.Va. 742, 356 S.E.2d 496 ("Matured installments provided for in a decree, which orders the payment of monthly sums for ... child support, stand as 'decretal judgments' against the party charged with the payments."); Syl. pt. 2, in part, *Kimble v. Kimble,* 176 W.Va. 45, 341 S.E.2d 420 (1986) ("A decretal child support obligation may not be modified, suspended, or terminated by an agreement[.]").