No. 13-0120 -    *United Hospital Center, Inc. v. Cheryl Romano, Assessor of Harrison County, and Craig Griffith, Tax Commissioner*

**FILED**

**May 29, 2014**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

Davis, Chief Justice, dissenting:

This case presented a simple, straightforward question of statutory construction for the Court's resolution–a textbook example of reconciling two statutes when a specific statutory provision[1] and a general legislative enactment[2] address the same issue. We previously have held that "[t]he general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled." Syl. pt. 1, *UMWA by Trumka v. Kingdon*, 174 W. Va. 330, 325 S.E.2d 120 (1984). Despite our established procedure for resolving such a conflict between two applicable statutes, though, the majority of this Court resolutely has refused to follow our longstanding precedent while simultaneously ignoring the clear expression of legislative intent present in the subject enactments. As such, the majority's decision of this case is contrary to our established case law and the Legislature's intent in promulgating such legislation. Accordingly, I dissent.

[1]*See* W. Va. Code § 11-3-9(a)(17) (2008) (Repl. Vol. 2013) (recognizing as exempt from taxation "[p]roperty belonging to . . . *any hospital* not held or leased out for profit" (emphasis added)).

[2]*Cf.* W. Va. Code § 11-3-9(a)(12) (2008) (Repl. Vol. 2013) (affording tax exempt status to "[p]roperty used for charitable purposes and not held or leased out for profit").

1

### A. W. Va. Code § 11-3-9(a)(17) Governs the Decision of this Case

In deciding the case *sub judice*, the majority relied upon the broader statutory provision that governs charitably-used property generally, W. Va. Code § 11-3-9(a)(12) (2008) (Repl. Vol. 2013), while making only passing reference to W. Va. Code § 11-3-9(a)(17) (2008) (Repl. Vol. 2013), the narrower statute that pertains specifically to hospital-owned property, such as United Hospital Center's (hereinafter "UHC") new facility that is at the heart of the instant controversy. This Court previously has held that deciding a matter involving a legislative enactment requires us to refer to our established rules of statutory construction to guide our analysis: "When called upon to discern the meaning of a legislative enactment, this Court resorts to well-accepted rules of statutory construction." *In re Stephen Tyler R.*, 213 W. Va. 725, 740, 584 S.E.2d 581, 596 (2003). *See also Gerlach v. Ballard*, ___ W. Va. ___, ___, 756 S.E.2d 195, 200 (2013) ("[O]ur rules of statutory construction require us to give meaning to all provisions in a statutory scheme." (internal quotations and citation omitted)); *State v. King*, 205 W. Va. 422, 427, 518 S.E.2d 663, 668 (1999) ("In interpreting any statute, our principles of statutory construction require us to give effect to the spirit, purpose, and intent of the Legislature." (citation omitted)). Among these instructive principles is the rule that when two statutes address the same topic and cannot be reconciled, the specific statute prevails over the more general provision: "The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled." Syl. pt. 1, *UMWA*

2

*by Trumka v. Kingdon*, 174 W. Va. 330, 325 S.E.2d 120. Thus, "[a]s a rule, when both a specific and a general statute apply to a given case, the *specific* statute governs." *In re Chevie V.*, 226 W. Va. 363, 371, 700 S.E.2d 815, 823 (2010) (emphasis in original). Therefore, insofar as UHC is a *hospital* corporation and the new facility for which it seeks tax-exempt status is intended to be used as a *hospital* facility, the majority should have decided this case by applying the language of W. Va. Code § 11-3-9(a)(17), which specifically addresses "[p]roperty belonging to . . . any *hospital* not held or leased out for profit,"[3] to the facts of this case rather than basing its decision on the more general language of W. Va. Code § 11-3-9(a)(12), which pertains to the broader category of "[p]roperty used for charitable purposes." Instead, however, the majority mentioned W. Va. Code § 11-3-9(a)(17) only one time in passing while en route to deciding the case under W. Va. Code § 11-3-9(a)(12).

While both of these statutory provisions appear to achieve the same ultimate purpose, *i.e.*, to exempt from taxation property used for charitable purposes, the legislative rules interpreting and clarifying the classification and treatment of tax-exempt property indicate that the Legislature further has established a very precise procedure for determining the taxability of hospital-owned property, the nuances of which the majority of the Court clearly has not grasped in its decision of this case.

---

[3](Emphasis added).

3

Although the majority discussed the legislative rule directly applicable to the issue before the Court, W. Va. C.S.R. § 110-3-24.17.3, the majority failed to appreciate the intended application of this rule by considering it in isolation rather than in the context in which it was adopted–that is, as part of a detailed procedure for determining the taxability of hospital-owned property. In this regard, the West Virginia State Tax Commissioner proposed, and the Legislature approved and adopted, W. Va. C.S.R. §§ 110-3-24.17.1 to -5 (1989). This legislative rule provides, in full, as follows:

**110-3-24. Charitable Hospitals.**

. . . .

24.17. Vacant land and construction.

24.17.1. When a hospital purchases land which it intends to use for capital improvements, which will be used for charitable purposes, the land shall not be exempt so long as the land is vacant. So long as the land is vacant, it can be sold and used for noncharitable purposes.

24.17.2. Vacant tracts owned by a hospital will remain subject to taxation, even if plans are made which show that the land will be used for tax exempt purposes.

*24.17.3. If construction is begun on a tract for the purpose of making improvements to be used for hospital purposes, such property shall not be exempt under this section until it has been put to such actual use as to make the primary and immediate use of the property charitable in accordance with Section 19 of these regulations.*

24.17.4. If construction is begun on a tract exempt under this section from ad valorem taxation at the time construction is initiated, such construction shall not void the pre-existing

4

exemption if the proposed use of the improvements so constructed is to be a charitable use consistent with the provisions of this section.

24.17.5. Construction of improvements, the proposed use of which is not charitable, shall not void a pre-existing exemption under this section until such time as the primary and immediate use of the property is not longer charitable in accordance with this section and Section 19 of these regulations.

W. Va. C.S.R. §§ 110-3-24.17.1 to -5 (emphasis added).

In rendering its ruling, the majority suggested that application of W. Va. C.S.R. § 110-3-24.17.3 to deny tax-exempt status to UHC's new facility would create an unduly harsh result because of the relocation of its IT and housekeeping departments prior to the July 1, 2010, assessment date.[4] However, the majority's misguided interpretation of this rule ignores the fact that taxing an uncompleted hospital building, such as UHC's new facility, was precisely what the Legislature and the Tax Commissioner intended in adopting this comprehensive legislative rule delineating between hospital-owned property that is subject to taxation and hospital-owned property that is tax-exempt. Even the taxpayer, UHC, appreciated the plain meaning of this legislative rule and anticipated that its incomplete facility would be taxed as evidenced by UHC's lament that it had intended to relocate all of its operations to its new facility and would have done so prior to the July 1, 2010, assessment

---

[4]*See* W. Va. Code § 11-3-1(a) (2010) (Repl. Vol. 2013) (directing that "[a]ll property . . . shall be assessed annually as of July 1 at sixty percent of its true and actual value").

date but for construction problems that delayed the facility's completion and ability to accommodate patients. Barring a finding that a legislative rule is invalid or otherwise unenforceable, this Court simply is not at liberty to substitute its own convoluted interpretation for the plain language of a legislative rule. *See* Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W. Va. 137, 107 S.E.2d 353 (1959) ("When a statute [or rule] is clear and unambiguous and the [drafter's] intent is plain, the statute [or rule] should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute [or rule]."). Rather, the Court was obligated to apply, not construe, such plain language to effectuate the intent of the Legislature in approving the legislative rule and to accord deference to the interpretation of such rule by the body charged with its administration: "A valid legislative rule is entitled to substantial deference by the reviewing court. As a properly promulgated legislative rule, the rule can be ignored only if the agency has exceeded its constitutional or statutory authority or is arbitrary or capricious." Syl. pt. 4, in part, *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W. Va. 573, 466 S.E.2d 424 (1995). *See also* Syl. pt. 2, *West Virginia Health Care Cost Review Auth. v. Boone Mem'l Hosp.*, 196 W. Va. 326, 472 S.E.2d 411 (1996) ("Once a disputed regulation is legislatively approved, it has the force of a statute itself. Being an act of the West Virginia Legislature, it is entitled to more than mere deference; it is entitled to controlling weight. As authorized by legislation, a legislative rule should be ignored only if the agency has exceeded its constitutional or statutory authority or is arbitrary or

6

capricious."). Instead, however, the majority substituted its own confusing and tortured interpretation of W. Va. C.S.R. § 110-3-24.17.3 for the express, plain, and unmistakable intent of the Legislature. Accordingly, I resolutely dissent from the majority's ruling in this regard.

### B. Until It Was Licensed, UHC's New Facility Could Not Be Used to Effectuate Its Charitable Purpose of Operating a Hospital

In addition to missing the mark by misinterpreting and misapplying the plain language of W. Va. C.S.R. § 110-3-24.17.3, the majority also has misconstrued the meaning of "primary and immediate use" in the context of this case. As the majority astutely noted, "[u]nder section 1, Article 10, Constitution, the exemption of property from taxation depends on its use. To warrant such an exemption for a purpose there stated, the use must be primary and immediate, not secondary or remote." Syl., *State ex rel. Farr v. Martin*, 105 W. Va. 600, 143 S.E. 356 (1928). With specific respect to the case *sub judice*, "[p]roperty used for a hospital can not be exempted from taxation under the Constitution of this state unless it is used for charitable purposes." Syl. pt. 3, *Reynolds Mem'l Hosp. v. County Court of Marshall County*, 78 W. Va. 685, 90 S.E. 238 (1916).

No one disputes that UHC is a corporation that has been formed to operate a hospital and that the operation of a hospital is the ultimate intended use of UHC's new facility. In fact, in its "Agreement of Incorporation," UHC identifies the operation of a

7

hospital as its primary purpose:

> The purpose[] for which this Corporation is formed [is] as follows:
>
> 1. To own, operate, conduct and maintain *hospitals* and related facilities in Harrison County and elsewhere in West Virginia.

(Emphasis added). Consistent with the legislative promulgations defining "primary use," UHC specifically has stated that its "chief, main or principal" use of its new facility is the operation of a hospital. *See* W. Va. C.S.R. § 110-3-2.48 (1989) (defining "primary use").[5] Similarly, UHC has acknowledged that the "immediate use," or direct use, of its new facility is its operation of a hospital facility. *See* W. Va. C.S.R. § 110-3-2.31 (1989) (defining

---

[5]W. Va. C.S.R. § 110-3-2.48 (1989) provides as follows:

2.48. The term "primary use" is use which is chief, main or principal.

2.48.1. Whenever property is required to be "used" for stated purposes in order to qualify for exemption under W. Va. Code § 11-3-9, the stated purpose must be the primary or immediate use of the property, and not a secondary or remote use. The property may be used for purposes which are ancillary to the stated purpose, but the ancillary use must further the stated, primary use.

2.48.2. Whenever property is required to be "used exclusively" for stated purposes in order to qualify for exemption under West Virginia Code § 11-3-9, the stated purposes must be the primary and immediate use, and not a secondary or remote use. The property may not be used for purposes which are ancillary to the stated purpose.

"immediate use").[6] However, simply stating the laudable purpose of operating a hospital and intending to use it as such do not a hospital make. Rather, the Legislature scrupulously has defined the parameters for the establishment of a hospital facility and has imposed stringent licensing requirements before an entity is allowed to operate as a hospital.

Pursuant to W. Va. Code § 16-2D-2(p) (2010) (Repl. Vol. 2011), a "hospital" is defined as

> a facility licensed as such pursuant to the provisions of article five-b [§§ 16-5B-1 et seq.] of this chapter, and any acute care facility operated by the state government, that primarily provides inpatient diagnostic, treatment or rehabilitative services to injured, disabled or sick persons under the supervision of physicians and includes psychiatric and tuberculosis hospitals.

*See also* W. Va. Code § 16-5B-1 (1977) (Repl. Vol. 2011) (establishing hospital licensing requirement).[7] This definition is reiterated in W. Va. C.S.R. § 110-3-2.29 (1989), which also

---

[6]Pursuant to W. Va. C.S.R. § 110-3-2.31 (1989), "[t]he term 'immediate use' is use which is direct and not separated in time, relationship or connection."

[7]W. Va. Code § 16-5B-1 (1977) (Repl. Vol. 2011) provides, in pertinent part:

> No person, partnership, association, corporation, or any local governmental unit or any division, department, board or agency thereof shall establish, conduct, or maintain in the State of West Virginia any ambulatory health care facility, ambulatory surgical facility, freestanding or operated in connection with a hospital, hospital or extended care facility operated in connection with a hospital, without first obtaining a license therefor in the manner hereinafter provided: Provided, That only one license shall be required for any person, partnership,

(continued...)

9

defines a "hospital" in similar language:

> The term "hospital" means an institution which is primarily engaged in providing to in-patients, by or under the supervision of physicians, diagnostic and therapeutic services for medical diagnosis, treatment, and care of injured, disabled or sick persons, or rehabilitation services for the rehabilitation of injured, disabled or sick persons and which is either licensed by the West Virginia Department of Health as a hospital, or operated by the federal government or the state government as a hospital. This term also includes psychiatric and tuberculosis hospitals. See W. Va. Code § 16-2D-2(t).

A critical component of both of these definitions is the requirement that the institution seeking to operate as a hospital be licensed by the State of West Virginia.[8] However, because

_____

[7](...continued)
association, corporation or any local governmental unit or any division, department, board or agency thereof who operates any combination of an ambulatory health care facility, ambulatory surgical facility, hospital, extended care facility operated in connection with a hospital, or more than one thereof, at the same location. Ambulatory health care facilities, ambulatory surgical facilities, hospitals, or extended care facilities operated in connection with a hospital operated by the federal government or the state government shall be exempt from the provisions of this article.

A hospital or extended care facility operated in connection with a hospital, within the meaning of this article, shall mean any institution, place, building or agency in which an accommodation of five or more beds is maintained, furnished or offered for the hospitalization of the sick or injured[.]

[8]The parties do not contend, and I do not suggest, that UHC might come within the alternate requirement of being either a federal or a state government hospital. *See generally* W. Va. Code § 16-5B-1 (indicating that government hospitals are exempt from hospital licensure requirements).

its new facility had not yet been completed so as to permit it to accommodate patients, UHC's new facility was not licensed to operate as a hospital on the crucial assessment date of July 1, 2010. In fact, UHC did not receive its certificate of occupancy from the State Fire Marshal until August 18, 2010, and did not obtain its license to "operate a General Hospital" from the West Virginia Department of Health and Human Resources until nearly two months later on October 8, 2010. Thus, under the express legislative definition of a "hospital," the operation of which is UHC's stated charitable purpose, UHC was *unable* to achieve its "primary and immediate use" of its new facility as a hospital on July 1, 2010, because if it actually had attempted to use its new facility as a hospital on that date, *without having satisfied the requisite licensing requirements*, UHC would have been subject to criminal prosecution and subject to fine and/or imprisonment. *See* W. Va. Code § 16-5B-11 (1977) (Repl. Vol. 2011) (imposing criminal penalties for operation of hospital without a license).[9]

---

[9]The operation of a hospital without a license is a crime punishable by fine and/or imprisonment:

> Any person, partnership, association or corporation, and any local governmental unit or any division, department, board or agency thereof establishing, conducting, managing or operating an ambulatory health care facility, ambulatory surgical facility, a hospital, or extended care facility operated in connection with a hospital, without first obtaining a license therefor as herein provided, or violating any provision of this article or any rule or regulation lawfully promulgated thereunder, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be punished for the first offense by a fine of not more than one hundred dollars, or by imprisonment

(continued...)

The majority's failure to recognize that UHC could not *legally* have operated its new facility as a hospital on July 1, 2010, defies logic; lacks reason or justification; is inadvisable and incredible; and, frankly, leaves me speechless. In essence, the majority's decision in this case effectively authorizes a corporation to operate a hospital without first having obtained the appropriate licensure just to ensure that the corporation, as well as its property, enjoys tax-exempt status. From the majority's decision in this regard, I adamantly dissent.

---

[9](...continued)
in the county jail for a period of not more than ninety days, or by both such fine and imprisonment, in the discretion of the court. For each subsequent offense the fine may be increased to not more than five hundred dollars, with imprisonment in the county jail for a period of not more than ninety days, or both such fine and imprisonment, in the discretion of the court. Each day of a continuing violation after conviction shall be considered a separate offense.

W. Va. Code § 16-5B-11 (1977) (Repl. Vol. 2011).