# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **N.S., H.S., B.S., A.S., and J.S.**

**No. 18-0030** (Barbour County 17-JA-31, 32, 33, 34, and 38)

**FILED**

**May 14, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father T.S., by counsel Keith Skeen, appeals the Circuit Court of Barbour County's December 11, 2017, order terminating his parental rights to N.S., H.S., B.S., A.S., and J.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Terri L. Tichenor, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights without imposing a less-restrictive alternative, and in terminating his parental rights without due process.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed a petition in May of 2017 alleging that petitioner perpetrated multiple acts of domestic violence against the mother in the presence of the children. The DHHR alleged an extensive history of domestic violence and DHHR intervention beginning in 2009. The DHHR further alleged that the children were exhibiting aggressive behaviors and that those behaviors were a product of their environment. The circuit court ordered the removal of the children.

Later in May of 2017, the circuit court held a preliminary hearing. Petitioner, who was incarcerated due to his violation of bond conditions and a domestic violence protective order ("DVPO"), did not appear, but was represented by counsel. The mother testified that the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

domestic violence began when petitioner began abusing methamphetamine, prescription pills, and alcohol. The mother testified that petitioner struck her multiple times, with his fists and with objects, in the presence of the children, but denied that petitioner had ever been aggressive towards the children. The mother testified that the violence has resulted in "a few" DVPOs and in law enforcement intervention. The mother testified to an incident in which petitioner threatened to kill one or more of the children, which caused their schools to go on lockdown to ensure the safety of their children and others. The school attendance director testified that petitioner was placed upon the "predator" list and barred from entering any school property following those threats. The children's mother denied having contact with petitioner since the most recent DVPO was issued, but described a recent incident where petitioner passed her on the street and threatened to slit her and her boyfriend's throats. The circuit court found that the children were in imminent danger of further abuse or neglect and that their continuation in the home of the mother was contrary to their welfare.

Petitioner attended the adjudicatory hearing in July of 2017, with counsel. The circuit court took testimony from the mother that was substantially similar to the testimony produced at the preliminary hearing and took judicial notice of the mother's prior testimony along with various criminal and family court files. The circuit court noted the following: petitioner was previously convicted of three domestic battery charges and was granted alternative sentencing in the form of community corrections for the most recent charge in September of 2016; In May of 2017, petitioner appeared at the community corrections office and blamed the DHHR intervention with the children on the mother; petitioner then threatened to "slit someone's throat" and that, if he found the mother's boyfriend, he would "shoot him and then himself;" petitioner stated that he had firearms buried on his property; petitioner was involuntarily committed for mental health treatment that day; and petitioner's community corrections sentence was also revoked which resulted in his incarceration. The circuit court found that petitioner, despite entering a guilty plea in his criminal case, continued his threats of violence against the mother. Ultimately, the circuit court concluded that petitioner was an abusing parent and that the infant children were abused children. The mother was granted an improvement period and petitioner's case was set for a dispositional hearing.[2]

In October of 2017, petitioner was incarcerated and did not attend the dispositional hearing, but was represented by counsel. Petitioner moved for a post-dispositional improvement period, which both the DHHR and the guardian opposed. Counsel for petitioner proffered that he would be granted parole in December of 2017 and would then be able to participate in an improvement period. The circuit court noted petitioner's testimony in the most recent criminal case that he "experiences anger so severe that he has 'blackouts' and does not remember his actions[.]" Further, as evidenced by "the public meltdown" in May of 2017, the circuit court found that petitioner was unable to correct his violence towards his family even while under the supervision of community corrections. Ultimately, the circuit court found that petitioner was a danger to the infant children and there was no likelihood that he could correct the conditions of

---

[2]Before the dispositional hearing was held, petitioner moved for new counsel and current counsel was appointed.

abuse that led to the filing of the petition. Accordingly, the circuit court denied petitioner's motion for a post-dispositional improvement period and terminated petitioner's parental rights in its December 11, 2017, "Order Following Disposition Hearing." Petitioner now appeals that order.[3]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in terminating his parental rights without first granting him an improvement period. Petitioner asserts he should have been given an opportunity to participate in services. We disagree. The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period"); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements"). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period . . . .'" *In re Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004). Further, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.,* 212 W.Va. 443, 448, 573 S.E.2d 354, 359 (2002).

The circuit court did not err in denying petitioner's motion for a post-dispositional improvement period because it was unlikely petitioner would make any improvement. Petitioner

---

[3]The mother retains her parental rights and is currently participating in an improvement period. The children are presently placed with a relative. The permanency plan for the children is either return to the mother's care or adoption in their current placement. J.S. has reached the age of maturity and, according to the parties, now lives with petitioner.

was participating in community corrections as an alternative sentence for a third-offense domestic battery conviction before the petition was filed. Petitioner's immediate response to the petition was a "public meltdown," including threats against the children's mother and her boyfriend that necessitated involuntarily commitment of petitioner and resulted in a revocation of his alternative sentence. Apparently, petitioner made these violent, detailed statements in the community corrections office. Petitioner was under close supervision with obvious consequences for further violent acts but made no change from the pattern of domestic violence detailed in the mother's testimony. Further, petitioner took no action to remedy his violent tendencies. Petitioner argues that the DHHR did not provide services to remedy the conditions of abuse. However, the circuit court found that the DHHR did make reasonable efforts to achieve permanency in both its adjudicatory and dispositional orders. Further, the circuit court found that the continual domestic violence against the mother in the presence of the children was clear and convincing evidence of chronic abuse by the petitioner. West Virginia Code § 49-4-604(b)(7)(A) provides that the DHHR is not required to make reasonable efforts to preserve the family if the circuit court determines that "[t]he parent has subjected the child, another child of the parent, or any other child . . . to . . . chronic abuse." As such, it is clear that the DHHR was absolved of its statutory duty to make such efforts, despite the fact it nonetheless chose to do the same. Accordingly, we find that petitioner is not entitled to relief on this issue. The circuit court has discretion in its decision to grant an improvement period, and we find no abuse of discretion in this case.

The same evidence supports the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that, upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the [children]," the circuit may terminate the parental rights of an abusing parent. We have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened . . . ." *Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875 (quoting Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980)). The circuit court correctly found that there was no reasonable likelihood that the conditions of neglect or abuse could be corrected in the near future because petitioner could not correct the conditions under the close supervision of his alternative sentence. Petitioner continued to make threats and pose a danger to the children's mother even while in the community corrections office. Additionally, the circuit court correctly found that it was necessary for the welfare of the children to terminate petitioner's parental rights. Petitioner's past actions included threats against one or more of the children. Petitioner's unpredictable behavior continued to threaten the children and he made no effort to change his behavior. Accordingly, we find no error in the circuit court's termination of petitioner's parental rights.

Petitioner's final argument is that the circuit court erred and denied him due process by holding hearings in his absence. Specifically, petitioner argues that the circuit court should have considered the multiple factor test set forth in *In re Stephen Tyler R.*, 213 W.Va. 725, 584 S.E.2d 581 (2003), and concluded that petitioner should have been transported to these hearings. However, we have held that

4

an incarcerated parent who is a respondent to an abuse and neglect proceeding must inform the circuit court in which such case is pending that he/she is incarcerated and *request the court's permission to attend the hearing(s) scheduled therein.* Once the circuit court has been so notified, by the respondent parent individually or by the respondent parent's counsel, the determination of whether to permit the incarcerated parent to attend such hearing(s) rests in the court's sound discretion.

*Stephen Tyler R.*, 213 W.Va. at 734, 584 S.E.2d at 590 (2003) (emphasis added). Petitioner does not cite to a place in the record where he requested to be transported to the dispositional hearing or where counsel objected to his absence. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n.20, 524 S.E.2d 688, 704 n.20 (1999)." *Noble v. W.Va. Dep't of Motor Vehicles*, 223 W.Va. 818, 679 S.E.2d 650 (2009). Accordingly, we find that petitioner is entitled to no relief on this basis.

Lastly, because the proceedings in circuit court regarding the mother are still ongoing, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for children within twelve months of the date of the disposition order. As this Court has stated,

[t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

[i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 11, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  May 14, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

6