# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **K.C. and A.C.**

**No. 18-1008** (Hampshire County 18-JA-7 and 18-JA-8)

**FILED**

**April 19, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother G.C., by counsel David C. Fuellhart, III, appeals the Circuit Court of Hampshire County's September 9, 2018, order terminating her parental rights to K.C. and A.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Joyce E. Stewart, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in failing to transport her to the dispositional hearing, denying her motion for an improvement period, terminating her parental rights, and denying her post-termination visitation with the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed an abuse and neglect petition that alleged police served a warrant at petitioner's home and observed "feces throughout the house." Despite the fact that petitioner was on probation for animal cruelty and prohibited from possessing animals, police found "rabbits being stored in a closet and chickens . . . being kept in a bath tub." According to a Child Protective Services ("CPS") worker, the home had "a strong odor of ammonia, animal feces, and animal urine" which caused the worker difficulty breathing. As a result, petitioner was charged criminally with being a person prohibited from possessing an animal and animal cruelty. Police also found the children home from school, both exhibiting signs of lice and one with a virus. In fact, the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

DHHR alleged that one child's hair was so matted that CPS was "unable to get a brush through it to treat the lice." The petition further alleged that petitioner had a history of child abuse and/or neglect, including a criminal conviction of child neglect creating risk of bodily injury and a prior removal of the children from the home. Specifically, a prior abuse and neglect proceeding involving petitioner and the children concerned the same issues present in this matter. In that prior case, law enforcement removed twenty-nine animals from the residence, which was subsequently condemned, and found the children "hiding in the attic in their underwear." Later that month, the DHHR filed an amended petition related to other adult respondents. Petitioner waived her right to a preliminary hearing.

Beginning in March of 2018, the circuit court held a series of adjudicatory hearings. After the circuit court took extensive evidence in support of adjudication, petitioner ultimately entered a stipulation in June of 2018 whereby she admitted to a prior CPS history, including a prior finding of neglect; that she subjected the children to unsanitary conditions in the home; that she was a person prohibited from possessing animals, although she was in possession of animals at the time the petition was filed; that she was previously convicted criminally of child neglect creating risk of injury; that she had a prior criminal history, despite having denied any such history to CPS; and that she had a history of mental health issues. Moreover, the circuit court made findings related to the prior abuse and neglect proceeding involving petitioner that was based on the uninhabitable conditions of the home due to "a multitude of animals," the same conditions underlying the current proceedings. According to the circuit court, in the prior proceeding the children were reunited with petitioner in December of 2016, only to be removed a little over a year later upon the initiation of the current matter. As such, petitioner was adjudicated as having neglected the children herein.

The circuit court held dispositional hearings in July of 2018 and August of 2018. Petitioner attended the first hearing but did not attend the second due to her incarceration.[2] She was represented by counsel throughout both hearings. According to the record, the circuit court heard evidence related to petitioner's incarceration for a period of one to five years "with an unknown release date." Petitioner also moved for a post-dispositional improvement period. Based upon the evidence, the circuit court found that petitioner "attempted to thwart any effort by the [DHHR] to assist her minor children" because, when the children were removed, she told them "that the [DHHR] was here to hurt you, not help you." In denying petitioner's motion for an improvement period, the circuit court found that it would be futile given the fact that she was "previously provided services . . . for nearly identical allegations." Ultimately, the circuit court terminated

---

[2]Petitioner was held in a regional jail throughout the pendency of this matter and the circuit court secured her transfer to several hearings. However, at the first dispositional hearing in July of 2018, petitioner assured the circuit court that she would be released prior to the continued dispositional hearing. When the parties convened for the continued hearing in August of 2018, the circuit court was informed, for the first time, that petitioner had not only not been released, but had been transferred to Lakin Correctional Center.

petitioner's parental rights to the children and denied her post-termination visitation.  It is from the dispositional order that petitioner appeals.[3]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon review, the Court finds no error in the proceedings below.

At the outset, we note that petitioner is entitled to no relief as to her assignment of error regarding the circuit court's failure to transport her to the dispositional hearing, or any other assignment of error in which she relies on the failure to transport for support. The record is clear that petitioner did not request to be transported to the hearing in question and, accordingly, she is not entitled to relief for the circuit court's failure to secure her presence. Petitioner is correct that this Court has set forth procedural protections for incarcerated parents by establishing several factors to be considered in determining whether to permit an incarcerated parent to attend a dispositional hearing. *See* syl. pt. 11, *State ex rel. Jeanette H. v. Pancake*, 207 W. Va. 154, 529 S.E.2d 865 (2000). However, petitioner fails to recognize that this Court has additionally held as follows:

> In order to activate the procedural protections enunciated in Syllabus points 10 and 11 of *State ex rel. Jeanette H. v. Pancake*, 207 W.Va. 154, 529 S.E.2d 865 (2000), an incarcerated parent who is a respondent to an abuse and neglect proceeding *must inform the circuit court in which such case is pending that he/she is incarcerated and request the court's permission to attend the hearing(s) scheduled therein*. Once the circuit court has been so notified, by the respondent parent individually or by the respondent parent's counsel, the determination of whether to permit the incarcerated parent to attend such hearing(s) rests in the court's sound discretion.

---

[3]All parents' parental rights to the children have been terminated, in addition to the termination of the custodial rights of the children's custodian. The permanency plan is adoption by the children's current foster family.

Syl. Pt. 4, *In re: Stephen Tyler R.*, 213 W. Va. 725, 584 S.E.2d 581 (2003) (emphasis added).

Petitioner fails to provide any citation to the record that she informed the circuit court she was incarcerated and/or that she sought permission to attend the dispositional hearing. On appeal to this Court, petitioner asserts only that she "informed the lower court at the first [dispositional] hearing that she wished to testify at the second hearing." Indeed, the record indicates that petitioner expressed her desire to testify at the continued dispositional hearing. However, the record also shows that petitioner and her counsel informed the circuit court at the first dispositional hearing that petitioner would be released by the time the continued hearing was held. When the parties appeared for the continued hearing in August of 2018, petitioner's counsel informed the circuit court that instead of being released, petitioner had been sentenced and transferred to Lakin Correctional Center. The record is also clear that at the dispositional hearing in August of 2018, petitioner's counsel did not request a continuance or otherwise move to secure petitioner's presence at the hearing and did not object to the circuit court holding the dispositional hearing in her absence. As such, we find that the circuit court was not required to consider the factors outlined in *Pancake* given that petitioner did not inform the circuit court of her incarceration prior to the August of 2018 dispositional hearing or request permission to attend.

Next, petitioner argues that it was error to deny her motion for an improvement period. In support, petitioner argues that she acknowledged the conditions of neglect by stipulating to adjudication and further testified that "she would place her children above all other concerns." Further, petitioner argues that her successful completion of an improvement period in her prior abuse and neglect proceeding clearly showed that she was likely to fully comply with an improvement period in this matter. Upon review, we find no error in the circuit court's denial of petitioner's motion. While petitioner argues that her prior compliance with services supports the granting of an additional improvement period, the circuit court found that granting petitioner a new improvement period would be futile, given the fact that she was "previously . . . provided services . . . for nearly identical allegations as set forth in the instant case." We agree with the circuit court's reasoning. While it is true that petitioner completed an improvement period and regained custody of her children in a prior proceeding, the conditions that necessitated their removal in both cases were practically identical. Thus, the issues of neglect central to petitioner's first case, although mitigated for a short period, were never truly resolved.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); syl. pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the parent/respondent to demonstrate 'by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period.'" *In re: Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004). Here, we find that petitioner has not established an abuse of discretion in the circuit court's denial of her motion for an improvement period. While petitioner cites to her testimony regarding her acknowledgement of the conditions of neglect and her willingness to comply with services, we find that the circuit court was correct that an additional improvement period would be futile, given the persistence of the issues necessitating the children's

4

removal across two separate proceedings. As such, we find that petitioner is entitled to no relief in this regard.

Next, petitioner argues that the circuit court erred in terminating her parental rights "because there were alternative dispositions that were appropriate." According to petitioner, a less-restrictive disposition, such as placing the children in a legal guardianship pending her release from incarceration, would have been more appropriate and in keeping with the children's best interests. Further, petitioner argues that the circuit court's finding that there was no reasonable likelihood the conditions of neglect could be substantially corrected was not supported by the evidence. We disagree.

In finding there was no reasonable likelihood petitioner could substantially correct the conditions of neglect, the circuit court relied on the fact that petitioner "already participated in services with the [DHHR] and counseling through Potomac Highlands Guild, but it is clear her circumstances have not changed, nor has she apparently benefited from said services and resources in remedying the ongoing conditions of neglect and/or abuse." Further, the circuit court found that petitioner actively "attempted to thwart any effort by the [DHHR] to assist her minor children" by instructing them upon their removal that the DHHR intended to harm them, as opposed to help them. Based upon this evidence, the circuit court found that petitioner "demonstrated an inadequate capacity to solve or remedy the conditions and circumstances constituting neglect and/or abuse of her children on her own or with the aid of services implemented through a reasonable case plan previously." According to West Virginia Code § 49-4-604(c), "'no reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Based on the substantial evidence of the continued conditions in petitioner's home, it is clear that the circuit court did not err in making this finding.

West Virginia Code § 49-4-604(b)(6) permits a circuit court to terminate parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the child. As set forth above, the circuit court had ample evidence upon which to base its finding that there was no reasonable likelihood the conditions of neglect could be substantially corrected. Similarly, there was ample evidence to support the circuit court's finding that termination of petitioner's parental rights was necessary for the children's welfare. This evidence included the children's "ages and current status," in addition to the nature of the criminal offense which resulted in petitioner's incarceration during these proceedings, and the children's "paramount need of safety, security, stability, continuity and permanency."

This Court has held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code

5

§ 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected."
Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Further, "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4 (quoting syl. pt. 1, in part, *In re R.J.M.,* 164 W. Va. 496, 266 S.E.2d 114 (1980)). Based on the foregoing, it is clear that substantial evidence existed to support these findings. Accordingly, we find no error in the circuit court's termination of petitioner's parental rights.

Finally, petitioner argues that the circuit court erred in denying her request for post-termination visitation with the children. According to petitioner, the children, ages ten and twelve, were of appropriate maturity to express their desires to have continued contact with petitioner. In support of this assignment of error, petitioner cites to correspondence from therapists for the children who indicated that K.C. "expressed primarily wanting to live with her . . . mother," while A.C. "would like contact with her mother." As such, petitioner argues that "the lower court should have looked at whether . . . the children had a close emotional bond with [petitioner] and . . . what their wishes were regarding visitation."

While petitioner is correct that the children's therapists indicated that they were of sufficient maturity to express opinions on this issue, petitioner fails to recognize that the circuit court was not bound to follow their opinions. Indeed, this Court has held that

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). As this Court has made clear, circuit courts must consider the wishes of a child, where appropriate, but, ultimately, "'[i]n a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.' Syl. Pt. 2, *State ex rel. Lipscomb v. Joplin*, 131 W. Va. 302, 47 S.E.2d 221 (1948)." Syl. Pt. 3, *In re S.W.*, 233 W. Va. 91, 755 S.E.2d 8 (2014). While both children may have desired continued contact with petitioner, the circuit court considered their wishes and found that such contact would be detrimental to their well-being. This decision was based upon findings that petitioner permitted the same conditions of neglect to persist across two proceedings, which necessitated the children's removal on two occasions. As such, the circuit court found that "it is not in the minor children's best interests for their placement to [be] continually disrupt[ed]." Because the children need "safety, stability, security, continuity, and permanency," the circuit court denied petitioner's request for post-termination visitation, and we find no error in this ruling.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 9, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  April 19, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison