**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**December 10, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **M.S., F.S., R.B.-1, J.B., H.B.-1, and H.B.-2**

**No. 20-0452** (Pleasants County 19-JA-9, 19-JA-10, 19-JA-11, 19-JA-12, 19-JA-13, and 19-JA 14)

**MEMORANDUM DECISION**

Petitioner Mother A.C., by counsel Jessica E. Myers, appeals the Circuit Court of Pleasants County's March 2, 2020, order terminating her parental, custodial, and guardianship rights to M.S., F.S., R.B.-1, J.B., H.B.-1, and H.B.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Chaelyn W. Casteel, filed a response in support of the circuit court's order. The guardian ad litem for M.S. and F.S., B. Scott Wolfe, filed a response on behalf of those children in support of the circuit court's order. The guardian ad litem for R.B.-1, J.B., H.B.-1, and H.B.-2, Michael D. Farnsworth, filed a response on behalf of those children also in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing parent and denying her motion for a post-adjudicatory improvement period.[2]

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because R.B.-1 shares initials with his father, R.B.-2, we will refer to them as R.B.-1 and R.B.-2, respectively, throughout this memorandum decision. Also, because two children share the same initials, we will refer to them as H.B.-1 and H.B.-2, respectively, throughout this memorandum decision.

[2]Petitioner does not raise an assignment of error in regard to the termination of her parental, custodial, and guardianship rights. In petitioner's reply, she mentions in a single sentence that she is "simultaneously objecting to the termination of her parental rights." However, petitioner provides no argument whatsoever with regard to this claim. This failure is in direct contradiction of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requiring that

> [t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on,

(continued . . .)

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2019, the DHHR filed a child abuse and neglect petition against petitioner and R.B.-2. The DHHR investigated after law enforcement intervened during a domestic violence incident at the home and arrested R.B.-2, the father of several of the children at issue. Specifically, R.B.-2 returned home intoxicated late one night and attacked then-nine-year-old M.S. R.B.-2 slapped M.S. in the face, chased him outside, pushed him onto the concrete, and then dragged M.S. behind the house where he kicked him in the ribs while yelling profanities at him. R.B.-2 then took M.S. inside the house and petitioner called 911. The DHHR further alleged that R.B.-2 drank alcohol on a regular basis and that domestic violence occurred often in the home. The DHHR described previous referrals in December of 2018, February of 2019, and early April of 2019 regarding domestic violence, inadequate food, and unfit living conditions in the home. Finally, the DHHR outlined the extensive history of services provided to petitioner, including an improvement period in another case, which petitioner successfully completed in 2017. The DHHR amended the petition a week later, alleging that petitioner was aware of R.B.-2's violent nature and propensity to commit domestic violence yet continued to reside with him, which exposed the children to the risk of maltreatment.[3] The DHHR further alleged that it

> under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Additionally, in an Administrative Order entered on December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, this Court specifically noted that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. *Id.* "A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim . . . . Judges are not like pigs, hunting for truffles buried in briefs." *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011) (citation omitted). Because petitioner's brief with regard to this assertion is inadequate and fails to comply with Rule 10(c)(7) of the Rules of Appellate Procedure, we decline to address this issue on appeal.

[3]According to the record, R.B.-2 had at least two prior convictions for domestic battery and was charged and ultimately convicted of third offense domestic battery, a felony.

(continued . . .)

2

repeatedly requested that petitioner remove R.B.-2 from the home and leave her abusive relationship with him. Thereafter, petitioner waived her preliminary hearing. The DHHR submitted a court summary in late August of 2019, requesting that the circuit court adjudicate petitioner and not give her an improvement period because she had "been involved in the Court process several times in the past with improvement periods given."

The circuit court held a contested adjudicatory hearing in September of 2019. R.B.-2 testified that on the day of the incident, M.S. had refused to go to school and R.B.-2 and petitioner, with the help of the school principal, physically forced the child into a vehicle and took him to school. R.B.-2 testified that he planned to discipline M.S. that evening. He admitted to drinking alcohol throughout the day and taking several of the children to a restaurant where he continued to drink alcohol. Petitioner went to the restaurant and retrieved the children from R.B.-2 who then went to a neighbor's home and continued drinking alcohol. R.B.-2 stated that he went home and spanked M.S. but denied all other allegations of abuse against the child. R.B.-2 further admitted to being an alcoholic but denied all allegations of verbal and physical abuse against petitioner, despite his previous convictions for domestic battery against her.

The DHHR presented the testimony of several law enforcement officers. The first officer testified that he responded to petitioner's 911 call on the night in question and that he took petitioner's statement as well as the statement of the neighbor at whose residence R.B.-2 had been drinking. The officer stated that R.B.-2 denied touching M.S., despite the fact that the child had marks consistent with being slapped and kicked in the ribs and was found crying hysterically by the police. He also explained that he was very familiar with the residence as the sheriff's department had been called out to the home numerous times due to domestic violence and R.B.-2's regular alcohol abuse. A local chief of police also testified that he was familiar with the family due to the history of "domestic related, alcohol related" 911 calls. He further confirmed R.B.2's criminal convictions for domestic battery and stated that he personally instructed petitioner to remove R.B.-2 from the home "on several occasions."

Petitioner testified that she knew petitioner had been drinking alcohol the day of the incident. She stated that when R.B.-2 came home and attacked M.S. she could not stop him because she did not "know how to stop him." After she heard M.S. screaming inside the house, petitioner called 911. She confirmed a long history of domestic violence with R.B.-2 and acknowledged that he often insulted her in front of the children. She had no explanation for why she knowingly stayed in the abusive relationship with him. Petitioner stated that she gave R.B.-2 an ultimatum in February of 2019, that he could no longer drink alcohol. She received advice from her local Al-Anon[4] group to leave R.B.-2 if his alcoholism became "problematic." However, despite R.B.-2's continued alcohol abuse, petitioner allowed R.B.-2 to continue living in the home. Petitioner testified that R.B.-2 was harmful when he drank alcohol yet denied that he was a danger to herself and the children. Confusingly, petitioner also acknowledged that

---

[4]Al-Anon is a support group for the friends and relatives of alcoholics and is associated with Alcoholics Anonymous.

domestic violence perpetrated against her negatively impacted the children. Finally, petitioner disclosed having over thirty different contacts with the DHHR since 2017 due to the ongoing domestic violence and alcohol abuse in the home, including a safety plan implemented in June of 2017 that required R.B.-2 to stop drinking alcohol and temporarily leave the home.

Ultimately, the circuit court adjudicated petitioner as abusing parent. In its order, the circuit court found that

> the West Virginia Supreme Court of Appeals has time and again stated that domestic violence is a factor to be considered in determining the fitness of a parent and has found that domestic violence is abuse of a child where the child has been witness to such acts of violence. In re Stephen Tyler R., 213 W. Va. 725, [584] S.E.2d 581 (2003).

The circuit court further found that petitioner knew of R.B.-2's chronic alcohol abuse and domestic violence; sought and received education and advice from Al-Anon regarding leaving R.B.-2; admitted to allowing R.B.-2 to stay in the home despite violating her ultimatum to stop drinking alcohol; acknowledged that R.B.-2's alcohol abuse and resultant violent conduct posed a threat to the health, safety, and welfare of the children; and that she decided to stay in a relationship with R.B.-2 despite his violent nature and propensity to commit acts of domestic violence. Additionally, the circuit court found that petitioner failed to remove the children and otherwise "act appropriately in protecting the children and continued to expose said minor children to the risk of abuse, neglect, maltreatment, and injury." Finally, the circuit court found that petitioner knowingly allowed R.B.-2 to inflict mental and emotional injury on the children.

In January of 2020, the circuit court held a dispositional hearing. The guardians previously filed reports each recommending the termination of petitioner's parental rights to all children. Likewise, the DHHR moved for the termination of petitioner's parental rights. Petitioner testified that she knew R.B.-2 continued to drink alcohol outside of the home despite her ultimatum to stop drinking. She also testified that she stopped attending Al-Anon meetings even though they were helpful to her. She further testified that she had previously completed an improvement period in 2017, which included couples' counseling, parenting and adult life skills classes, and supervised visitations, but did not include domestic violence counseling. Petitioner stated that the children were returned to her care in 2017. R.B.-2 testified that domestic violence in the home was a "normal everyday activity" and often occurred in the presence of the children. He further testified that petitioner was unable to control the children and keep the home clean and orderly. However, he argued that he manipulated petitioner and that she deserved an improvement period.

By order entered on March 2, 2020, the circuit court denied petitioner's motion for an improvement period and terminated her parental, custodial, and guardianship rights to the children. In support, the circuit court found that petitioner had received extensive services throughout the years, both by the DHHR and other sources, yet continued to expose the children to domestic violence. As such, petitioner was unable to show a change in circumstances which would warrant an improvement period. The circuit court noted petitioner's long history of domestic violence with R.B.-2, which was a "normal, daily occurrence, and often occurred in the

4

presence of the children." Finally, the circuit court found that petitioner gave no credible excuse for her inability to protect the children by ceasing her abusive relationship with R.B.-2. Based on this evidence, the circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination of petitioner's parental, custodial, and guardianship rights was necessary for the children's welfare. Petitioner now appeals the March 2, 2020, dispositional order.[5]

This Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing parent because she did not fail to protect the children from R.B.-2's domestic abuse. According to petitioner, she did not know that R.B.-2 was going to come home and attack M.S., and therefore, she did not knowingly fail to protect the children. Furthermore, petitioner contends that she acted appropriately by taking M.S. and several other children outside to escape R.B.-2, calling 911, giving a statement to the police, and taking M.S. to the hospital the next morning. She also argues that the circuit court improperly considered her extensive history of domestic violence, referrals to the DHHR, and 911 calls to the police because they were not "conditions existing at the time of the filing of the petition." Because the children were returned to petitioner and R.B.-2 in 2017 after the successful completion of their improvement periods, petitioner contends that the DHHR and the court condoned the reunification of the family. We disagree, and find that petitioner is entitled to no relief.

---

[5]R.B.-2's parental, custodial, and guardianship rights to the children were terminated below. The father of M.S. and F.S. is nonabusing, and the children remain in his care. The permanency plan for R.B.-1 and J.B. is adoption together by their foster family. H.B.-1 and H.B.-2 are placed together in a second foster home with a permanency plan of adoption in that home.

We have previously held as follows:

> At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id*. at 546, 759 S.E.2d at 777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted). Further,

> "[West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (citations omitted).

Contrary to petitioner's argument on appeal, the DHHR alleged, and she was adjudicated of, a history of chronic domestic violence, not a single incident. The petition contained not only details from the night R.B.-2 attacked M.S. but also listed the instances where the children were previously removed from the home and placed in DHHR custody as well as the dates of services received by petitioner during her previous safety plans and child abuse and neglect proceeding in 2017. At the adjudicatory hearing, evidence established R.B.-2's previous convictions of domestic violence, the family's turbulent history with law enforcement regularly being called to the home, and the family's past DHHR referrals. All the evidence at adjudication concerning additional instances of domestic violence in the months and years leading up to the petition's filing clearly spoke to this chronic condition, as it existed when the petition was filed. Indeed, in her reply brief, petitioner concedes that "prior acts of abuse or neglect are relevant in [current] abuse and neglect proceedings." However, petitioner's argument concerning the evidence introduced at adjudication establishing other instances of domestic violence ignores the fact that the petition alleged chronic domestic violence and chronic failure to protect the children. Therefore, contrary to petitioner's argument that the DHHR was prohibited from presenting evidence of other instances of domestic violence, petitioner's extensive history of CPS involvement, and the family's extensive contacts with law enforcement or that the circuit court was prohibited from considering such evidence, it is clear that this evidence was properly admitted and considered.

Additionally, we find no error in the circuit court's adjudication of petitioner as an abusing parent. West Virginia Code § 49-1-201 defines "abused child" as

> [a] child whose health or welfare is being harmed or threatened by . . . [a] parent . . . who knowingly or intentionally inflicts, attempts to inflict, *or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home.*

(Emphasis added). According to the evidence gathered at the adjudicatory hearing, petitioner knew several important facts on the date of the incident in the underlying petition: 1) R.B.-2 was a chronic alcoholic, 2) R.B.-2 became violent when intoxicated, 3) R.B.-2 regularly perpetrated domestic violence upon petitioner and had done so for years, 4) R.B.-2 continued to drink alcohol despite her ultimatum and drank alcohol on the day of the incident, 5) R.B.-2 was the disciplinarian of the children, 6) R.B.-2 was angry about M.S.'s behavior the morning of the incident and argued with petitioner throughout the day about it, and 7) petitioner retrieved several of the children from R.B.-2 at a restaurant on the night of the incident. In light of these facts, the circuit court found petitioner's defense that she had no idea R.B.-2 would come home extremely intoxicated and attack her or another member of the family completely incredible. "A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). Regarding petitioner's contention that the DHHR and the court condoned R.B.-2 living in the home, she ignores the evidence that law enforcement officers, CPS workers, and support group members advised her or requested that R.B.-2 be removed from the home so that she could prevent such an incident that occurred with M.S. Petitioner knowingly ignored this advice at her own peril and continued to place her children in danger. Accordingly, we find no error in the circuit court's finding that petitioner abused and neglected the children.

Next, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period and that it improperly applied the standard for a post-dispositional improvement period. Petitioner contends that she was likely to fully participate in an improvement period because she "took all appropriate steps" on the date of the incident with M.S., previously successfully completed an improvement period in 2017, and participated in supervised visitations with the children. Finally, petitioner argues that the DHHR should have provided her domestic violence counseling if an improvement period were granted.

This Court has clearly held that "[t]he circuit court has the discretion to refuse to grant an improvement period when no improvement is likely." *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Petitioner is correct that in order to obtain an improvement period, West Virginia Code § 49-4-610 requires a parent to prove that they are likely to fully comply with its terms and conditions. However, she fails to recognize that entitlement to an improvement period is not absolute even if this burden is satisfied, as it is clear from the authority cited above granting a circuit court discretion to deny improvement periods when it finds that no improvement is likely. As outlined above, upon petitioner's repeated failure to remove R.B.-2 from the home despite her own ultimatum, the requests of law enforcement and the DHHR, and the advice of her Al-Anon group, petitioner was unable to remedy the conditions of abuse and neglect. When questioned why she refused to leave the relationship with R.B.-2, petitioner gave

no reasonable explanation. When asked if she would return to a relationship with R.B.-2 once he was released from prison, she indicated that she may. Petitioner's testimony established that she was aware that domestic violence in the home negatively impacted the children yet, confusingly, claimed that R.B.-2 was not a danger to herself and the children. We have previously held that failure to acknowledge the issues of abuse and neglect render an improvement period an "exercise in futility." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Here, petitioner clearly failed to acknowledge the conditions of abuse and neglect, as evidence by the circuit court's detailed findings regarding petitioner's long history of multiple abuse and neglect proceedings and CPS involvement that resulted in petitioner's prior adjudication as an abusing parent and a safety plan that required R.B.-2 to leave the home if he could not remain sober. As such, we find no abuse of discretion in the circuit court's determination that petitioner was incapable of making permanent change in its denial of her motion for an improvement period. While petitioner attacks the circuit court's finding that she failed to show a change in circumstances, which is the standard for the granting of a subsequent improvement period, the record nonetheless supports the denial of a post-adjudicatory improvement period as petitioner was unlikely to comply with the same. *See* W. Va. Code § 49-4-610(3)(D). Therefore, we find that petitioner is entitled to no relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 2, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: December 10, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison