**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **B.W. and N.W.**

**No. 25-3** (Braxton County CC-04-2024-JA-17 and CC-04-2024-JA-18)

**MEMORANDUM DECISION**

Petitioner Guardian S.D.[1] appeals the Circuit Court of Braxton County's December 3, 2024, order terminating her custodial and guardianship rights to B.W. and N.W., arguing that the circuit court erred by denying her an improvement period.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

On April 23, 2024, the DHS filed a petition alleging that the petitioner failed to protect the children from and allowed them to live with their biological parents, whose custodial rights were previously terminated; failed to provide them with a fit and suitable home; and educationally neglected B.W. The petition recounted a 2019 proceeding which resulted in the termination of the biological parents' custodial rights and the children being placed in a legal guardianship with the petitioner and her then-spouse. The dispositional order from the 2019 case required that all visitation between the parents and the children be supervised by the petitioner. In 2022, the petitioner submitted a letter to the circuit court asking that the parents' custodial rights be reinstated. The court responded, explaining that she had no standing and declined to address her request. Thereafter, the parents filed a motion requesting that the court reinstate their custodial rights. However, the court denied the motion in a September 2022 order, noting that the parents were convicted of felony child neglect, served their sentences, and completed parole. The petition alleged that on April 20, 2024, a Child Protective Services ("CPS") worker visited the petitioner's home to investigate allegations that the petitioner was allowing the children to spend time with their parents unsupervised. The petitioner told the CPS worker that she allowed the children to see their parents as much as they wanted in order to transition them back to their parents and admitted that she removed B.W. from school but claimed the child was medically excused. According to the petition, the CPS worker spoke with then-thirteen-year-old B.W. and then-eight-year-old N.W., who both stated that they lived at their biological mother's home and spent more time there than

---

[1] The petitioner appears by counsel Jonathan Fittro. The West Virginia Department of Human Services ("DHS") appears by Attorney General John B. McCuskey and Assistant Attorney General Wyclif S. Farquharson. Counsel Mackenzie A. Holdren appears as the children's guardian ad litem.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

1

at the petitioner's home. The CPS worker also spoke to Braxton County School District employees who confirmed that B.W. had been absent from school for approximately one month and no medical excuse had been provided.

In June 2024, the circuit court held an adjudicatory hearing, at which the Braxton County School District's attendance director testified that B.W. had over twenty-five unexcused absences and a similar number of excused absences and was failing nearly every subject. The witness further testified that the parents were listed as individuals with authority to sign the children out from school. The interviewer who conducted forensic interviews of the children testified that both children disclosed that they lived with their parents, unsupervised. The petitioner testified that she allowed the children to have unsupervised contact with their parents despite being aware that the dispositional order from the prior proceeding permitted only supervised visits between the parents and the children and despite the court's denial of the parents' motion for reinstatement of their custodial rights. In the resulting order, the court found that the petitioner failed to protect the children from unauthorized, unsupervised contact with the parents and neglected B.W.'s educational needs by taking the child out of school without establishing an alternate educational program. Accordingly, the court adjudicated the petitioner of neglecting the children.

In August 2024, the petitioner underwent a psychological evaluation, during which she acknowledged that she knew the parents were not permitted to be around the children as part of their criminal case but denied being aware that contact was prohibited due to the prior abuse and neglect proceeding. The evaluator noted that the petitioner continually "countered the bases for the [parents'] CPS and criminal cases" and "persistently spoke as though the rules either did not apply to her or that what she believes should overrule the judgments of the [circuit c]ourt." The evaluator opined that because the petitioner failed to accept responsibility for the neglect, there was no reason to believe she would follow any directives of the court, especially considering her "entitlement and . . . belief that her understanding and appreciation of the facts of the case supersedes that of the [c]ourt." Due to the petitioner's failure to abide by the court's directives, lack of appreciation of the severity of the parents' behaviors, and apparent belief that she was not required to follow rules or orders with which she did not agree, the evaluator concluded that the petitioner's prognosis for improved parenting was poor.

In October 2024, the circuit court held a dispositional hearing, at which the evaluator who performed the petitioner's psychological evaluation testified as to the petitioner's defensive response style and continual assertion that she was justified in allowing the children unsupervised contact with their parents. Next, a CPS worker testified that the DHS recommended termination of the petitioner's rights because she failed to acknowledge any wrongdoing, which rendered any services futile. Finally, the petitioner testified that she would take responsibility and participate in any services offered but continued to assert that she was unaware that the parents were not permitted unsupervised contact with the children. On the record, the court found that "[d]espite her feeble attempt today" to admit to wrongdoing in order to receive an improvement period, the petitioner failed to demonstrate that she would comply with any of the court's orders in the future. In the resulting order, the court found that the petitioner failed to accept responsibility for her actions, permitted the children to have unauthorized, unsupervised contact with the parents, and failed to protect them, resulting in them suffering emotional distress. The court concluded that termination of the petitioner's rights was in the children's best interest, there was no reason to

believe that the petitioner would comply with an improvement period or any orders of the court, there was no reasonable likelihood that she could substantially correct the circumstances of abuse and neglect in the foreseeable future, and there was no less restrictive alternative available. Accordingly, the court terminated the petitioner's custodial and guardianship rights.[3] It is from this order that the petitioner appeals.[4]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that the court erred by not granting her motion for a post-adjudicatory improvement period, asserting that she admitted that her "conduct was deficient and that she was willing to participate in services to prove her ability to comply with the court's orders."[5] However, in order to receive such an improvement period, the petitioner was required, among other things, to "demonstrate[], by clear and convincing evidence, that [she] [wa]s likely to fully participate in the improvement period." W. Va. Code § 49-4-610(2)(B). Furthermore, "[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem . . . results in making the problem untreatable and in making an improvement period an exercise in futility at the child[ren]'s expense." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Upon review, we find no error. The record is replete with evidence of her failure to abide by court orders and refusal to acknowledge her own neglectful conduct. Moreover, the petitioner admitted to allowing contact between the parents and the children and acknowledged that said contact violated the court's dispositional order from the prior proceeding yet claimed that violation was "reasonable." Accordingly, the court determined that she was not likely to participate in an improvement period. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002) ("The circuit court has the discretion to refuse to grant an improvement period when no improvement is likely."). As such, the court did not err in denying her motion for an improvement period.[6]

---

[3] While the court's order purports to terminate the petitioner's parental and custodial rights, she was the children's legal guardian and had no parental rights to terminate. On the record, the court terminated "all parental rights, or[] all custodial rights or any rights she may have by virtue of being a custodian to these children." Thus, it appears that the court intended to terminate her custodial and guardianship rights, and we discuss her argument with this understanding.

[4] The parents' custodial rights were previously terminated. The petitioner's ex-spouse (with whom she continued to live) voluntarily relinquished his guardianship rights to the children. The permanency plan for the children is guardianship in the current placement.

[5] While the petitioner represents in her appellate brief that she filed a motion for a post-adjudicatory improvement period, the motion does not specify what kind of improvement period she desired. Thus, we analyze her assignment of error as written and apply authority regarding post-adjudicatory improvement periods.

[6] The petitioner also argues that the circuit court erred by denying her motion to add the children's parents as respondents to the proceeding below, as they retained their parental rights.

3

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 3, 2024, order is hereby affirmed.

Affirmed.

**ISSUED**: November 25, 2025

**CONCURRED IN BY**:

Chief Justice William R. Wooton
Justice C. Haley Bunn
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Senior Status Justice John A. Hutchison

---

Indeed, West Virginia Code § 49-4-601(b) (2019) requires that "[e]ach petition shall name as a party each parent, guardian, custodian, other person standing in loco parentis of or to the child." However, the petitioner fails to provide a citation to the appendix record where she filed such a motion or where the circuit court denied such a motion, leaving this Court with nothing to review. *See Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009) (quoting *Shaffer v. Acme Limestone Co., Inc.*, 206 W. Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)) ("Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered."); W. Va. R. App. P. 10(c)(7) (permitting this Court to disregard errors that are not supported by "appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal.") Moreover, even if this Court were able to consider this assignment of error, the petitioner fails to demonstrate how this resulted in harm or prejudice against her or substantially frustrated the purpose of the rules governing these kinds of proceedings. *See In re Stephen Tyler R.*, 213 W. Va. 725, 735 n.17, 584 S.E.2d 581, 591 n.17 (2003) (explaining that an error that does not substantially frustrate the purpose of the Rules of Procedure for Child Abuse and Neglect Proceedings and related statues is harmless).

4